Argued December 5, 1940; reargued January 28; reversed
July 1, 1941

# DeLASHMITT *v.* JOURNAL PUBLISHING CO.

(114 P. (2d) 1018, 135 A. L. R. 1175)

Before Kelly, Chief Justice, and Rand, Bailey, Lusk, Rossman and Brand, Associate Justices.

*Charles A. Hart*, of Portland (Carey, Hart, Spencer & McCulloch and Hale McCown, all of Portland, on the brief), for appellant.

*Paul A. Sayre* and *Lamar Tooze*, both of Portland (Cake, Jaureguy & Tooze, of Portland, on the brief), for respondent.

ROSSMAN, J. This is an appeal by the defendant, publisher of the Oregon Daily Journal, from a judgment in favor of the plaintiff in a libel action. The judgment, in the amount of $5,050, was based upon a verdict.

Upon the trial the defendant conceded that it published the article quoted in the complaint; that the article was false; that the plaintiff bore a good reputation; that he was engaged in the retail florist business; and that he was entitled to some damages. The sole issue tried in the circuit court was the amount of damages. In mitigation the answer alleged that the defendant published the item through mistake, without malice, and that immediately after the error was discovered it published a correction. The libelous article appeared in the issue of December 3, 1938. A copy of it follows:

"Fined as Peeper—Ralph Delashmitt, 1733 N. E. 53d avenue, was fined $25 in municipal court Friday on a charge of being a Peeping Tom. Delashmitt was captured by Lambert L. Beard, 5833 N. E. Halsey street, who testified he found Delashmitt looking into the windows of his home."

The complaint, after alleging in some detail that as a result of the publication the plaintiff suffered humiliation and that his reputation, credit and health were injured, concluded those averments with the following: "Plaintiff has been generally damaged in

the sum of $15,000.00.'' The next paragraph of the complaint states:

"* * * that immediately after the publication of said libel the volume of plaintiff's business declined materially; that this plaintiff believes and therefore alleges that he has lost a number of permanent customers, and that his volume of business has been materially decreased by the said publication, as hereinbefore set forth; that plaintiff believes and therefore alleges that by reason of the said publication, as hereinbefore set forth, this plaintiff's business, and therefore this plaintiff, has been specially damaged by loss of trade, good will and otherwise in a sum not less than $2,500.00.''

Upon the trial it developed that the plaintiff caused the arrest of a "Peeping Tom" who plead guilty in the Portland municipal court and was fined $25. A reporter in the defendant's employ, before writing the above article, consulted the records of the police department. Either because the records departed from their usual style or because of haste, the reporter mistook the name of the accuser for the name of the accused and thus transposed them when he wrote his account of the affair. The article as published was given no headline. It appeared in the Saturday afternoon edition upon page 5 in a column with many other items entitled Town Topics. That afternoon a friend of the plaintiff called his attention to the article and thereupon the plaintiff telephoned to a representative of the defendant directing attention to the error. The next day, Sunday, the defendant's newspaper published a correction of the item upon page 4 of the main section of the paper. It carried the following headline in large type: "Florist Annoyed By False Report." The corrective article clearly stated that the plaintiff was the

one who caught the culprit and that the previous report concerning the matter was false. The article consumed twice as much space as the erroneous one. Shortly a newspaper entitled The Rose City Herald, which circulates in the plaintiff's neighborhood, also published a corrective article.

■ As we have seen, the complaint sought the recovery of damages for injury to the plaintiff's business as well as for injury personal to the plaintiff. By reverting to the defamatory article, it will be noticed that it made no mention of the plaintiff's business. That being true, no damage for loss of business was recoverable, unless plead and proved. *Mannix v. Portland Telegram*, 136 Or. 474, 284 P. 837, 297 P. 350, 300 P. 350.

In an endeavor to support his claim for special damages, the plaintiff depended entirely upon the fact that his volume of business in the several months following the publication of the defamatory article was less than in the corresponding months of the previous year. For instance, his gross sales in December, 1938, that being the month in which the article was published, were $1,551.71, and his sales in December, 1937, were $1,764.97. His sales in January, 1939, were $62 less than in January, 1938. The sales in February, 1939, however, were $1.11 more than in February, 1938. But his sales in March, April and May of 1939 were less than the sales in the corresponding months of 1938. Possibly if all other circumstances affecting his business had been the same for the two years, it would be permissible to conclude that the article had had an injurious effect upon his business. However, we notice that each month of 1938 showed a decrease in the sales from 1937. And it is very material to

note that the six months immediately following the publication showed a smaller decline from 1937 than the six months previous to the publication. The two percentages are 6.1 per cent and 17.5 per cent. The decline of December, 1938, from December, 1937, was 12 per cent, but the decline of November, 1938, from November, 1937, was 17.3 per cent.

The plaintiff testified: ''We had a less volume of business in 1939 than we had in 1938. However, I believe it was a slow year in all of the florists' industry and also in the retail trade that year.'' Further, referring to the article, he said: ''I believe our business suffered to a certain extent. It is hard to say any set amount that we did lose because I don't know what it did * * *.'' His wife, who served the business in the capacity of bookkeeper, testified: ''I can't directly say if it was due to the case or to business, but I know that we had a falling down of the business.'' Then she was asked, and answered, as follows: ''Q. Now, Mrs. DeLashmitt, is there any way to connect the falling off of business with this publication? A. There is no way.'' The evidence does not name or in any other way identify any person who failed to patronize plaintiff's place of business on account of the defamatory publication.

██ The transcript of testimony has been very carefully read in this court. In fact, it has been read and studied by some members more than once. All of us are satisfied that the evidence wholly fails to indicate that the decline in the plaintiff's business was in any way caused by the publication of the defamatory article. It is manifest that a causal connection must be established. ''The defamatory matter must be the proximate cause of the business losses,'' says 37 C. J., Libel and Slander,

p. 117, § 567. See to like effect *Mannix v. Portland Telegram,* supra; Newell on Slander and Libel (4th ed.), § 749; and Odgers on Libel and Slander (6th ed.), p. 313. That being true, no damages for alleged business loss were recoverable.

■■ As we have just said, the record failed to indicate that the plaintiff suffered any special damages, but the instructions told the jury:

"Your verdict should award him such sum as in your judgment will fairly compensate him for such loss or injury. This may include damages for any injuries to plaintiff's reputation and for physical or mental suffering *and also for any loss to plaintiff's business.*"

It is clearly evident that the part of the instruction in italics should not have been given. In giving it, error was committed. The plaintiff argues, however, that since defendant's counsel wrote the instruction just quoted and handed it to the trial judge, he invited the commission of that error. The trial was very short. Before the noon recess defendant's counsel wrote the quoted instruction and handed it to the court. At that time the plaintiff's evidence in chief had not yet been concluded. Evidently at that time the defendant's counsel assumed that the plaintiff would submit evidence substantiating his averments of special damages. Before the instructions to the jury were commenced the defendant's counsel, in language which could not have been misunderstood, withdrew the request. He said: "We request that the jury be instructed that there has not been sufficient proof to establish any money loss or any injury to the plaintiff's business, and therefore there is no basis for the allowance of special damages." The presiding judge then inquired: "Any objection to that?" and received this reply from plain-

tiff's counsel: "Well, yes, Your Honor, we feel that we are entitled to go to the jury on the special damages to the plaintiff's business." It is evident from those remarks that the presiding judge realized that the defendant had changed its position after the written request had been made and no longer desired that it be given. Had the defendant's counsel employed technical accuracy he would have mentioned the written instruction by name in withdrawing it, but in the stress of trials technical accuracy can not always be expected. All members of this court are satisfied that the trial judge and counsel for the plaintiff understood that the requested instruction had been withdrawn. That being true, the claim of invited error can not be sustained.

■ As we have just seen, defendant's counsel, before the instructions were given, requested that the jury be instructed: "There has not been sufficient proof to establish any money loss or any injury to the plaintiff's business, and therefore there is no basis for the allowance of special damages." At the conclusion of the instructions the presiding judge stated: "An exception will be allowed to the refusal of the Court to give any of the requests submitted." That, of course, included an exception for the omission of the requested instruction just quoted.

■ It is evident that the refusal of the trial judge to give the instruction just quoted was error. The refusal to give it, followed by the statement to the jury, "This may include damages  *  *  *  for any loss to plaintiff's business", authorized an award for an item of damage unsupported by any evidence. But the plaintiff argues that, by the deduction of $50 from the judgment, all prejudicial effect of the error can be elimi-

nated. His contention is based upon the fact that the verdict reads:

"We, the jury, duly impaneled to try the above entitled cause, find for the plaintiff and against the defendant in the sum of $5000 general damages, and $50 special damages."

However meritorious that contention would be had the instructions defined the terms "special damages" and "general damages," we are satisfied that it must be rejected in this case because the instructions wholly failed to define or even to use those terms. The instructions nowhere employed the word "general" or "special". Nor did they tell the jury that injury to feelings was classified differently by the law of damages than loss of business. The only kinds of damages which they mentioned were nominal, compensatory and exemplary. They told the jury, and correctly so, that the latter were not recoverable. No other kind of damages was in any way mentioned.

The instruction stated:

"Now, the plaintiff claims that by reason of the publication of this article he has been damaged in his business and in his personal comfort in the sum of $15,000.00; that his business has been damaged in the sum of $2,500.00."

It will be observed that that part of the instruction combined in its treatment damage to business and person and lumped them together in the one sum of $15,000. Regardless of what was intended, those words were capable of inducing a belief that injury to business and to person were of the same kind. As a matter of fact, the language just quoted is the only part of the instructions in which the plaintiff's demand is stated and amounts are mentioned. Neither the pleadings in

their entirety, nor any part of them, were read to the jury.

■■ In its ultimate analysis, the problem before us is the construction of the verdict; that is, the ascertainment of the jury's meaning. Although courts go a long way in sustaining verdicts, they demand that the jury's meaning be unambiguous: *McLean v. Sanders*, 139 Or. 144, 7 P. (2d) 981. The terms "general damages" and "special damages" are not parts of the layman's speech. They are legal devices resorted to for the purpose of denoting particular kinds of damages. In each term the adjective was arbitrarily selected. The fact that those terms are not in current use outside of the legal profession is indicated by the circumstance that most dictionaries, even most of the unabridged ones, do not include them. Juries are usually composed of men who are not learned in the use of legal terms, and certainly there is no presumption that they are familiar with such terms. A standard treatise states that it is often difficult to distinguish general from special damages: 17 C. J., Damages, p. 715, § 42, and 25 C. J. S., Damages, p. 457. We can not assume that the jurors who tried this case knew offhand the meaning of the terms "general damages" and "special damages." Since we have no assurance that the jury knew the meaning of these terms, we have no assurance that a deduction of $50 from the judgment would cure the error; in fact, it would be as logical to say that a deduction of $5,000 would be required to cure the error.

In view of the part of the instruction which stated that the plaintiff claimed "that by reason of the publication of this article he has been damaged in his business and in his personal comfort in the sum of $15,000; *   *   *''" and the omission of the instruction to define

the terms "general damages" and "special damages," it is as reasonable to believe that the jury, under the head of special damages, entered the amount which they awarded for injuries to personal feelings as to believe that the $50 was given for damage to plaintiff's business. It is in truth accurate to say that no one can know whether the $50 was allowed for the one purpose or the other. It is altogether possible that a part, if not all, of the $5,000 award was made for supposed business loss.

No imagination is required to apprise one of the reason why an explanation of the meaning of the two terms was omitted. Plaintiff's counsel did not prepare his form of verdict until the instructions had been completed. In the haste of the moment the able and experienced trial judge, not having had his attention directed to the form of the verdict, evidently was not aware that it made provision for both special and general damages. Therefore, no explanation was given to the jury.

An argument is attempted that the jury could have grasped the meaning of the two terms by resorting to the pleadings. Section 5-312, O. C. L. A., authorizes the jury to take with them the pleadings when they retire to deliberate upon their verdict. The jury was not instructed to read the pleadings filed in this case, nor were they informed that through reading them they could ascertain the meaning of the two questionable phrases. As we have already said, the pleadings were not read to the jury. The brief statement of the issues contained in the instructions could hardly have induced the jury to view the pleadings with interest; in fact, the word "pleadings" was not employed in the instructions. There is nothing in the record which indi-

cates whether or not the jurors glanced at any of the pleadings. Even if they turned to them for the purpose of ascertaining whether damage to business was general or special in its nature, they could easily have been misled, for the paragraph of the complaint which avers the general damages says that, by reason of injury to "his reputation and credit," the plaintiff was "generally damaged in the sum of $15,000." The plaintiff's reputation was, of course, closely identified with his business, and likewise with his claims of business loss. The word "credit" to most people connotes a business or commercial matter. Since most of the time of the trial was consumed with evidence which was intended to show damage to business, the jury could readily have believed from the four words just quoted (if they read them) that business losses were general damages. But, we repeat, there is nothing in the record which indicates that the jury looked at the pleadings. Speculation upon the subject appears to be idle.

When a requested instruction has been erroneously refused, prejudice is presumed. The party in whose favor the error was committed thereupon has the burden of overcoming the presumption by showing that the error did not in fact influence the verdict or that the record indicates that some other incident neutralized the error.

We are not satisfied that a deduction of $50 from the judgment would remove from it all of the effects of the error which was committed when the instruction which the defendant requested at the close of the evidence was refused.

On account of the circuit court's refusal to instruct the jury that purported business losses were not recoverable, the judgment must be reversed. The cause will be remanded.

BAILEY, J. (dissenting). The jury in this case returned the following verdict:

"We, the jury, duly impaneled to try the above-entitled cause, find for the plaintiff and against the defendant in the sum of $5,000, general damages, and $50, special damages."

Judgment was entered in favor of the plaintiff, based on this verdict, for $5,050.

In submitting to the jury the question of whether the plaintiff had been specially damaged by loss of business, the trial court committed error. That error, however, does not necessitate or even warrant reversing the judgment and remanding the cause for a new trial, with consequent delay and added expense. It can be cured by deducting from the amount of the judgment the $50 awarded as special damages and affirming the judgment as so modified. And this should be done, pursuant to § 3 of article VII of the Oregon constitution, which provides in part as follows:

". . . or if, in any respect, the judgment appealed from should be changed, and the supreme court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the supreme court; . . ."

The object sought to be accomplished by the amendment of article VII in 1910 was, in the language of the sponsors of the amendment, "to simplify procedure on appeals to the supreme court and remove the pretext for new trials in those cases in which substantial justice is done by the verdict and judgment, but in which the trial court may have made a technical mistake; or if the verdict is just and the judgment is not,

to make it the duty of the supreme court to enter the proper judgment, if that can be done, instead of sending the case back for a new trial'': Statement, Voters' Pamphlet, 1910, page 177.

But it is insisted by the defendant that it is impossible for this court to say what judgment should have been entered in the circuit court, inasmuch as it has no way of ascertaining how much of the $5,000 awarded by the jury as general damages was mistakenly intended by it as damages for loss of plaintiff's business. To bolster up this contention the defendant directs attention to the following statement made by the trial court in explaining to the jury the issues in the case:

"Now, the plaintiff claims that by reason of the publication of this article he has been damaged in his business and in his personal comfort in the sum of $15,000.00; that his business has been damaged in the sum of $2,500.00."

It will be observed that the court, in the excerpt above quoted, used the word "business" twice, the first time, apparently, intending to say "reputation". The mention of "business" in connection with damages of $15,000 was not noticed by counsel, or at least the trial court's attention was not directed to the use of that word in relation to general damages. Had this inadvertence or inaccuracy been noticed at the time by counsel for the respective parties and considered of any consequence, it undoubtedly would have been called to the court's attention, by counsel for the plaintiff because it omitted the principal claim of damages, that is, for injury to reputation, and by counsel for the defendant because of the special finding in the form of verdict submitted to the jury.

There are other and persuasive reasons to believe that the jury was not so confused and befuddled that it did not know and appreciate the difference between general and special damages. In compliance with § 5-312, O. C. L. A., the jury, when it retired for deliberation, took with it the pleadings in the case. There can be no doubt that the jury must have understood why the pleadings were taken to the jury room, in view of the explanation by the trial court, as follows:

"Now, these papers [the pleadings] that the parties themselves have lodged with the court and with you are not evidence; they are the claims of the parties. You will have them with you in the jury room. They are sent to you there for the purpose, if you be at a loss to know what the issues of fact are, and the issues of fact is your sole concern, you can resort to these papers. They are sworn to, it is true, but nothing therein contained can be by you used as supporting or even tending to support any fact necessary to be established in the case."

In paragraph VIII of the amended complaint the plaintiff alleged:

"That by means of the said publication, as herein set forth, this plaintiff has been greatly injured in his reputation and credit; he has been caused mental pain and suffering, embarrassment and humiliation; plaintiff's health has been impaired and plaintiff has been rendered nervous, so that he has lost sleep, and plaintiff has been generally damaged in the sum of $15,000.00."

And in paragraph IX of the same pleading the plaintiff, after setting forth loss of business, stated:

". . . . That plaintiff believes and therefore alleges, that by reason of the said publication, as hereinbefore set forth, this plaintiff's business, and therefore this plaintiff, have been specially damaged by

loss of trade, good will, and otherwise, in a sum not less than $2,500.00."

In the prayer, the plaintiff "demands judgment against the defendant for the sum of $15,000.00, general damages, and the sum of $2,500.00, special damages, and for the costs and disbursements of this action."

There is nothing involved or complicated in the allegations of the amended complaint. Had the jury been at a loss to understand the distinction between general and special damages, the amended complaint would have clearly informed it of the basis of each such demand. Furthermore, the jury was present during the discussion of the defendant's oral request "that the jury be instructed that there has not been sufficient proof to establish any money loss or injury to plaintiff's business, and therefore no basis for the allowance of special damages."

In the majority opinion it is stated that there is nothing in the record which indicates that the jury glanced at the pleadings. That also could be said generally of exhibits introduced in evidence. In many instances the exhibits are much more voluminous and complicated than the pleadings in this case. We must presume that the jury, composed of "the most competent of the permanent citizens of the county" (§ 5, article VII, Oregon constitution), could and did, with the record before it, understand the difference between general and special damages as applied to the facts in this case.

The trial of the case was concluded in less than a day. The only question for the jury to decide was the amount of damages to which the plaintiff was entitled by reason of the defendant's publishing the libelous article. When the attorney for the plaintiff had com-

pleted his opening argument, counsel for the defendant stated: "We will submit the matter to the jury without argument. The thing is fresh in their minds. I don't think I can add anything, your Honor."

On conclusion of the instructions the following colloquy occurred:

"The court [to the jury]:  *  *  *  You will be provided with two forms of verdict . . .

"Mr. Hart [counsel for defendant]: You only need one form, in view of the fact that some damages will be awarded.

"The court: Yes, I understand, but have you got it ready?

"Mr. Sayre [counsel for plaintiff]: If the court please, I prepared a form of verdict at the office and then forgot to bring it, but I have just written one out which I will hand you [handing paper to the court].

"The court: Do you have any exception to this, Mr. Hart?

"[Mr. Hart examined the form of verdict referred to.]

"Mr. Hart: No, except my . . .

"The court: Yes. An exception will be allowed to the refusal of the court to give any of the requests submitted or any modification of them.

"Mr. Hart: I am afraid I confused what I asked of your Honor because the typewritten instruction, requested instruction I passed up was drawn before the testimony was closed, and it included the reference to credit, so that . . .

"The court: Yes. Well, as I understand there is nothing claimed in the complaint for credit, loss of credit.

"Mr. Hart: Yes, there is, your Honor, loss of reputation and credit, and in one of the instructions that you gave there is that reference to it."

The court, after being assured by counsel for both litigants that there was no evidence in the record as

to the effect of the publication on the credit of the plaintiff, instructed the jury to "disregard the question of credit."

This court has so frequently held that it is only error properly excepted to that will be reviewed on appeal, that citation of authorities is unnecessary. It is also a familiar rule of appellate procedure that the failure of the trial court to give instructions on particular matters is not ground for reversal in the absence of a request therefor made. In *Burgess v. Charles A. Wing Agency*, 139 Or. 614, 11 P. (2d) 811, the defendant contended that the court's instructions did not specify in sufficient detail the issues to be decided by the jury. In answering that argument this court observed:

"If the defendants believed that the instructions given were not sufficient they should have made their wishes known by some application to the circuit court. In the absence of such application and an unfavorable ruling, no premise was supplied for action by this court: State v. Hay, 132 Or. 223 (283 P. 753); State v. Jennings, 131 Or. 455 (282 P. 560). This is a court of review. The principle of procedure just mentioned found application in Thomas v. Smith-Wagoner Co., 114 Or. 69 (234 P. 814), wherein the appellant, like those now before us, attempted to predicate error upon the alleged failure of the court to give certain instructions which he did not request until he had reached this court. This court declined to consider them. It follows that this assignment of error presents no merit."

See also, in this connection, 2 Oregon Digest, "Appeal and Error", § 216 and authorities thereunder cited.

Substantial justice would be done by eliminating the amount found by the jury as damages for loss of

business and affirming the judgment as to general damages. The practically nominal sum awarded as special damages indicates that the jury believed that the injury to plaintiff's business was slight, and negatives the defendant's contention that the award for general damages was increased by including therein an allowance for special damages for injury to plaintiff's business. There is nothing in the record to indicate that the jury probably or even possibly had in mind any loss of business suffered by the plaintiff, in assessing the amount of general damages to be awarded him. Therefore, there is no reason why the amount found by the jury as general damages should be disturbed.

This court in *Lane v. Schilling*, 130 Or. 119, 279 P. 267, 65 A. L. R. 1042, held that the plaintiff therein could not recover against the receiver of a bank punitive damages for libelous statements made by the president of the bank before the bank became insolvent and a receiver thereof was appointed. The verdict did not indicate how much had been awarded as general and how much as punitive damages, and for that reason the court, in holding that the question of punitive damages was erroneously submitted to the jury, on appeal reconsidered the evidence and entered judgment for the amount of general damages to which it believed the plaintiff entitled.

In *Martin v. Cambas*, 134 Or. 257, 293 P. 601, the plaintiff instituted an action against five defendants, as to one of whom nonsuit was granted, to recover compensatory and exemplary damages for false arrest and imprisonment. The verdict of the jury was as follows:

"We, the jury, duly empaneled to try the above-entitled cause, find our verdict for the plaintiff and

against the defendants as follows: against F. W. Cambas, John H. Cart, Wm. Brier the sum of $250 apiece for punitive damages and assess plaintiff's general damages in the sum of $5,000 against Wm. J. Blake and assess punitive damages in the sum of $9,250 against Wm. J. Blake. All costs to be prorated against defendants."

Judgment was entered on the verdict in favor of the plaintiff, against the defendants therein named. On appeal, this court, after holding that punitive damages should not have been allowed, observed:

"In the present case the measure of damages against the defendant William J. Blake is such as will constitute a just and reasonable compensation for damages caused by the illegal arrest. This amount the jury fixed under the evidence at $5,000. That part of the verdict assessing and apportioning punitive damages should be treated as surplusage and deleted.

" 'Verdicts are to have reasonable intendment, and surplusage or immaterial findings may be rejected in construing them. Thus, if the verdict finds the issue and something more, the latter part of the finding will be rejected as surplusage, and judgment rendered independently of the unnecessary matter, there being nothing to show the jury reasoned falsely': 38 Cyc. 1890."

The court then referred to and quoted from article VII, § 3, of the constitution, and stated that the judgment should be corrected and one entered on the verdict in favor of the plaintiff and against the defendant Blake in the sum of $5,000. The opinion ends with this language:

"The judgment of the circuit court will be corrected, by eliminating all that part thereof for punitive damages, and affirmed as to general damages in favor of plaintiff and against defendant William J. Blake in the sum of $5,000."

The supreme court of Vermont, in *Mazzolini v. Gifford*, 90 Vt. 352, 98 A. 904, held that the plaintiff was not entitled to exemplary damages and affirmed the judgment for general damages. In disposing of this matter the court therein stated:

"The jury assessed the plaintiff's damages at $650, and it appeared, by an answer of the jury to a special interrogatory, that of the damages assessed by them $100 was assessed as exemplary damages. We think that to the extent of the exemplary damages the verdict was vitiated. There was not only no 'direct evidence' that other stores were kept open, but there was no evidence of such fact. Offers to show such fact were excluded.

"There was nothing in that respect to be considered in any way, and the matter was so left that the jury probably, and it may be said apparently, acted upon the theory that there was indirect evidence of discrimination against the plaintiff proper to be considered on the question of exemplary damages. However, we do not send the case back for another trial upon the question of exemplary damages. In consequence of the error which intervened in the matter of exemplary damages, we eliminate the amount of such damages from the judgment."

See also *Cole v. Christenson*, 163 Wis. 409, 158 N. W. 56, wherein compensatory and punitive damages were separately assessed and the appellate court modified the judgment because of the improper inclusion therein of punitive damages, reasoning thus: "Inasmuch, however, as those [punitive] damages are separately assessed, the error may be corrected by now disallowing them", while affirming the award of compensatory damages.

Because of the error of the circuit court in submitting to the jury the matter of special damages for loss of business, the judgment appealed from should

be modified by eliminating the $50 awarded as special damages. To reverse the judgment of the circuit court and remand the cause for a new trial, as the record stands, on the mere supposition that the jury, in filling out the form of verdict submitted to it, may not have understood the difference between general and special damages and may possibly have included under general damages some amount of money intended as special damages, is, in my opinion, unwarranted and in contravention of § 3 of article VII. In any view of the matter, we must accredit the jurors with ordinary intelligence and at least average discernment. See *Erickson's Dairy Products Co. v. Northwest Baker Ice Machine Co.*, 165 Or. 553, 109 P. (2d) 53, and *Erdman v. Inman*, 165 Or. 590, 109 P. (2d) 593. "Appellate courts should be slow to impute to juries a disregard of their duties, and to trial judges a want of diligence or perspicacity in appraising the jury's conduct": *Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U. S. 474, 485, 53 S. Ct. 252, 255, 77 L. Ed. 439, 445.

For the reasons hereinabove expressed, I dissent.

KELLY, C. J., concurs.