Argued September 25, affirmed November 19, petition for
rehearing denied December 19, 1952

# DENTON *v.* ARNSTEIN

### 250 P. 2d 407

*Cleveland C. Cory,* of Portland, argued the cause for appellant. On the brief were Hart, Spencer, Mc-

Culloch, Rockwood and Davies, and John C. Beatty, Jr., of Portland.

*W. J. Prendergast, Jr.*, of Portland, argued the cause for respondent. With him on the brief was David Weinstein, of Portland.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, WARNER and TOOZE, Justices.

## TOOZE, J.

This is an action brought by Beverly V. Denton, as plaintiff, against Milton M. Arnstein, as defendant, to recover damages for personal injuries claimed to have been caused by an assault and battery committed by defendant against plaintiff. The case was tried to a jury. A verdict was returned in favor of plaintiff for the sum of $4,600 as compensatory damages, and for the further sum of $5,400 as punitive damages. Judgment was accordingly entered, and defendant appeals therefrom.

Northeast Union avenue is an established public street in the city of Portland, Multnomah county, Oregon, and it has been duly designated by the State Highway Commission of the state of Oregon as a state highway through the city of Portland, being a part of highway No. 99E. It is a four-lane highway, running in a general northerly and southerly direction. Traffic upon N. E. Union avenue is controlled by traffic signals installed at a large number of street intersections along its route. Northeast Glisan street also is a public street of the city of Portland, running in a general easterly and westerly direction and intersecting N. E. Union avenue. Traffic at such intersection is controlled by traffic signals. Immediately south from this inter-

section and on N. E. Union avenue, there is a viaduct crossing what is known as "Sullivan's Gulch".

On May 9, 1949, at about the hour of 7 o'clock p. m., plaintiff was operating a 1946 Hudson automobile in a southerly direction along N. E. Union avenue. She was driving in the easterly, or inside, lane for traffic proceeding south. It was daylight, and the pavement was dry. According to plaintiff's testimony, when she reached the intersection of N. E. Union avenue and N. E. Glisan street, the traffic light turned to red, and, obeying this signal, she brought her automobile to a stop. She states that, while she was so stopped and waiting for the signal to change so that she might proceed, the defendant, driving his 1948 Cadillac automobile along the inside lane of traffic proceeding south, approached her automobile from the rear and stopped. She claims that defendant immediately commenced sounding the horn on his car and continued to sound the horn until after the traffic light changed. When the traffic light changed, plaintiff states, she immediately put her car in motion and was followed by defendant's car, with the horn on that car still sounding. When she had proceeded but a short distance south, defendant bumped the rear of her car with the front of his automobile, but with no substantial degree of force. She then states that, after she had proceeded farther for a short distance, defendant again sounded the horn on his automobile and then drove his car into the rear end of the Hudson with great force. The grille on the front of defendant's car and one headlight were smashed, and a fender dented. In her version of the collision, plaintiff was corroborated by two disinterested witnesses and by her husband. There was testimony to the effect that defendant in driving his automobile weaved in and

out of traffic, traveling from one lane of traffic to the other. There also was testimony to the effect that defendant had been using intoxicating liquor and was arrogant and belligerent immediately following the collision.

J. C. Stewart, a variety merchant of the city of Portland, who was traveling southerly in the outside lane of traffic for southbound vehicles and approximately 50 feet from the defendant's car, and who was not acquainted with any of the parties, testified as a witness for the plaintiff. In the course of his direct examination, he testified:

"Q   Where was the first crash that you noticed?

"A   Approximately not more than 50 feet in front of me.

"Q   where with reference to the intersection was the crash?

"A   I don't remember.

"Q   Tell the jury what you saw there and what you did.

"A   Well, the first crash, I noticed—the two cars in front of me were parallel and not driving very fast, about 20 miles an hour, and this big car came down and deliberately crashed into the car and then stopped and took another run at the car and broke his headlight, and then he stopped, and three men, myself and two other men got out and demanded that the driver of the big car get out, and we went over and signed up as witnesses and told the lady if she needed any witnesses in court we would appear there."

No objection was made at the time to the use of the word "deliberately" in this narration by the witness of what he observed.

Another disinterested witness, Oswald H. Reed, testified that immediately prior to the collision, he was

traveling south on N. E. Union avenue along the outside lane for traffic and following behind defendant's automobile. He observed the acts of defendant. He told about the defendant's car having been driven twice into the back of the automobile which plaintiff was driving. On direct examination, as a witness for plaintiff, he testified:

"Q  I want you to tell the jury, Mr. Reed, in your own words just what you saw after this Cadillac which had cut over in front of you cut back into the other lane, tell the jury now what happened.

"A  Well, there was two cars ahead of the Cadillac, and the Hudson was just about in between, or just about abreast of the second car, and we was all going approximately the same speed, and the Cadillac pulled out of the outside lane right behind the Hudson and bumped her, blew his horn and hit her again.

"Q  In other words now in the lane of traffic next to the curb on the viaduct in front of your car was another car, and in front of the Cadillac was the other automobile?

"A  Right.

"Q  Over to the left of you in the inside lane the Hudson was even with the first of the two cars ahead of you?

"A  Approximately.

"Q  And they were all traveling approximately the same speed?

"A  Yes.

"Q  The Cadillac cut out from the outside lane and came into the inside lane?

"A  Yes, the Cadillac cut from the outside lane into the inside lane.

"Q  And came up to the Hudson?

"A  Yes, and came up to the Hudson.

"Q  And pushed it ahead?

"A  Yes.

"Q    Honked the horn?

"A    Yes.

"*    *    *    *    *

"Q    You say the Cadillac sounded the horn and then struck the Hudson again, is that correct?

"A    Yes, that's correct.

"Q    Will you tell the jury whether or not that was a light blow or what kind of a blow it was.

"A    It was a blow you could hear a good half block away.

"Q    What happened to the Hudson?

"A    After the second impact the Hudson stopped and the Cadillac stopped and the two cars in the lane in front of me pulled over to the curb and stopped and I pulled over to the curb ahead of them and stopped.

"Q    And did you go back to the scene of the collision?

"A    I went back, and there was one other fellow on the sidewalk and another one came up and he was getting the names of the witnesses and I gave him my name and address and then went on about my business."

Plaintiff was approximately in the eighth month of pregnancy at the time of the collision. She expected her child to be born about May 26. When the collision occurred, plaintiff's abdomen came in forcible contact with the steering wheel of the Hudson, and she suffered a blow to her chin. Plaintiff remained in bed more or less constantly for five weeks immediately following the collision. She suffered aches in all parts of her body, particularly in her abdomen, and was unable to sleep without sedatives. She experienced great fear, worry, and apprehension for her unborn child, and her mental worries and nervous condition were aggravated after May 26 and until June 13, when the baby was born. The child was in every way normal. She testified that she has been highly nervous since that

time, that she cannot sleep as well as she did formerly, and that she suffers from nightmares. No physician testified on her behalf as to her condition at the time of trial. Her own testimony disclosed that all evidences of the blows received to her chin and abdomen had long since disappeared. No objective symptoms were discernible. All the symptoms as testified to were entirely subjective.

Dr. Paul B. Hansen, who examined plaintiff a few days prior to the trial, testified on behalf of defendant that, from his examination of plaintiff, he was able to find no evidence whatever that she was suffering any nervous condition or shock that was due in any way to the collision. He based his opinion upon the history of plaintiff's case as related to him by her, and upon his own examination.

It is obvious that if plaintiff's version of how the collision occurred is true, defendant's conduct was not only wilful, intentional, and deliberate, but it also was arrogant, belligerent, and contemptible.

However, defendant did not admit the course of conduct attributed to him by plaintiff and her witnesses. He gave an entirely different version of how the collision occurred and placed the blame therefor squarely upon plaintiff's shoulders. In his version of the affair, defendant was corroborated by one of his employees who was riding in the back seat of defendant's car at the time. Defendant testified that the collision occurred under the following circumstances:

"Q Now will you just tell the jury from the time you first stopped at the stop light just what took place.

"A Well, the Hudson, after the light changed —she was looking off to the side and the light

changed, she didn't move, so I blew my horn and she started off. Well, as she started off her car jerked, and all of a sudden she put on her brake like she had started out in high gear, I presume, it jerked like a car was in a gear that it shouldn't have been in. And she put on her brake and I put on my brake, so that I wouldn't collide into her, and I come to within about, oh, three or four feet of her, possibly three feet to the best of my knowledge. And then she accelerated her car and started off, and I accelerated my car and I was within about 20 or 25 feet in back of her, and all of a sudden she looks off to the side and put on her brakes and stopped dead, and I glanced off to the side and when I turned around to look I applied my brakes and it was too late to avoid a collision.

"Q Do you recall approximately where the collision occurred?

"A Approximately in the center of the viaduct.

"Q That is the bridge of the Sullivan's Gulch?

"A Yes.

"Q And in which lane?

"A In the outer—well, in the lane closest to the center of the street.

"Q Did you at any time change into the other lane while you were crossing the viaduct?

"A At no time.

"Q You followed the Hudson car across the viaduct?

"A Yes.

"Q Now did you notice any signal by the plaintiff at the time?

"A At no time did I notice a signal.

"Q How many times from the time you first saw the plaintiff's automobile did you blow your horn?

"A I blew my horn at the intersection, and then I blew my horn again when she applied the brakes

because of the fact that she had stopped in front of me, I wanted her to realize that I was behind her and that she had made the sudden stop, but that is the only two times that I can recall that the horn was blown.

"Q Did you blow your horn at the time when she stopped the second time?

"A No, it all happened so fast I couldn't."

The evidence discloses that defendant is engaged in the jewelry business under the trade name of "Carter's Jewelry". He owns one store located at Vancouver, Washington, in which he employs five persons. He owns another at Roseburg, Oregon, in which he employs seven persons. At the time of the collision, he was on his way home from his Vancouver store. He resided at 3011 S. E. Bybee boulevard, in Portland.

It was exclusively within the province of the jury to decide which version of how the collision occurred should be accepted as true. By its verdict, the jury decided that issue in favor of plaintiff.

In her complaint filed in this action on October 21, 1949, plaintiff alleged two inconsistent causes of action. In her first cause of action plaintiff alleges that defendant "did wilfully, maliciously, deliberately, wrongfully and repeatedly drive his said Cadillac automobile into and against said Hudson automobile then and there being driven by the plaintiff, and did wilfully, maliciously, deliberately, violently and repeatedly ram into the rear of said Hudson automobile being driven and occupied by the plaintiff." After alleging the injuries sustained by plaintiff as the proximate result of such collision, she demands a judgment for compensatory damages and for punitive damages.

In her second cause of action plaintiff alleges that the sole, proximate cause of the collision and resulting injuries was the carelessness, recklessness and negligence of the defendant in certain particulars as specifically set forth. Under this cause of action, she demands a judgment for compensatory damages only.

On November 9, 1949, defendant filed his motion to compel plaintiff to elect whether she would proceed upon a theory of intentional tort or upon the theory of negligence. The record does not disclose any formal disposition of this motion.

Defendant answered, denying all the material allegations of plaintiff's complaint. As a further, separate and affirmative answer and defense, defendant charged that said collision occurred by reason of careless, reckless and negligent acts on the part of plaintiff in the particulars specifically set forth. Plaintiff replied, denying all the allegations of new matter alleged in the answer.

At the outset of the trial defendant again moved the court for an order compelling plaintiff to elect upon which cause of action she would proceed. The trial court took the motion under advisement, but the trial proceeded. Upon the conclusion of plaintiff's testimony and after she had rested, defendant renewed his motion to compel plaintiff to elect. The trial court sustained the motion, whereupon plaintiff elected to stand upon her first cause of action. The court immediately instructed the jury as follows:

"Ladies and gentlemen of the jury counsel for defendant moved the Court for an order requiring the plaintiff to elect in this case whether to proceed upon her first or second causes of action. The Court ruled that the plaintiff would be required to elect, and plaintiff, acting through her counsel did elect

to proceed upon her first cause of action. And that means, ladies and gentlemen, that that part of the plaintiff's complaint which is characterized as a further and separate cause of action is no longer in this case. You are to fully disregard that second cause of action. You shouldn't even take the time to read it, because when I say it is out of the case it is out of the case, and anything that is alleged in that pleading is of no importance whatsoever in this case, it has nothing to do with this case. Is that clear? I may comment on that later in my instructions, but I want you to know at this time that we just have the one cause of action, and that is the first one.

"" * * * * *

"" * * * The second cause of action is one wherein the plaintiff alleges that by reason of certain acts of negligence, which are delineated in the second cause of action, the plaintiff was injured, and as a result of said injuries incurred certain expenses, also claims damage because of pain and suffering resulting from that injury. In other words the second cause of action is based upon what we term in the law, ordinary negligence. The first cause of action is one wherein the plaintiff alleges that the defendant wantonly, wilfully, maliciously, deliberately and repeatedly drove his car into and against the rear of the Hudson automobile which the plaintiff was operating at the time of the mishap.''

Defendant sets forth three assignments of error upon this appeal, the first two relating to the refusal of the court to give certain requested instructions to the jury, and the third to a denial by the court of defendant's motion for a mistrial.

In effect, defendant has waived his assignment of error based upon the court's refusal to give to the jury his requested instruction numbered III. However, this assignment of error is also based upon the court's

refusal to give his requested instruction numbered IV, which reads:

"I have heretofore instructed you that plaintiff's second cause of action, in which she alleged that the defendant negligently collided with the automobile which she was driving, is no longer a part of this case. I therefore instruct you that if you should find from the testimony and evidence in this case that the accident was caused by any act of negligence on the part of the defendant, or that it was caused by acts of negligence on the part of both plaintiff and defendant, or that it was solely caused by any act of negligence on the part of the plaintiff, then you must return your verdict in favor of the defendant and against the plaintiff."

The trial court instructed the jury as follows:

"At this juncture, in order to avoid any misunderstanding as to the controversial issues which you will have to solve in arriving at your verdict in this case, I again instruct you, as heretofore, that for legal reasons, which under the established judicial procedure of this state are not to be considered in your deliberations, you are to wholly disregard plaintiff's second cause of action, wherein it is alleged in substance and effect that the collision between said Cadillac and Hudson automobiles, and the resultant injury and damage suffered by plaintiff, was the direct and proximate result of defendant's negligence in the particulars alleged in Paragraph IV of plaintiff's said first [second] cause of action.

"And having so instructed you it logically follows that defendant's affirmative answer and defense to plaintiff's complaint wherein defendant alleges that plaintiff was herself careless, reckless and negligent in the particulars alleged in Paragraph II of defendant's further separate and affirmative defense is wholly irrelevant to any of the issues you will have to resolve in your deliberations,

and I therefore instruct you to wholly disregard said separate affirmative defense.''

After calling the jury's attention to the allegations of plaintiff's first cause of action, the court further instructed the jury thus:

''Now the defendant in his answer to this complaint, and the charges made therein, after first admitting that the collision between the said Cadillac and the Hudson automobiles occurred at the time and place alleged in plaintiff's complaint, then denies each and every allegation contained in plaintiff's complaint, which I have just read to you.

''You have heard the testimony of the plaintiff and the defendant, also that of their witnesses, tending to prove or disprove much of the charges, claims and demands made in their pleadings as are in dispute, and upon the conclusion of these instructions this case will be submitted to you and it becomes your duty to decide which party shall prevail. *In the performance of that duty you are required to observe and apply the principles of law as given you in these instructions, irrespective of what your independent views of the law might be.* (Italics ours.)

''First of all, it is the law that the party having the affirmative of an issue is charged with the burden of proof, which means that in this case in order for the plaintiff to recover in this action she must prove said charges, claims and demands made against the defendant in her complaint, which I have heretofore read to you.''

After defining ''preponderance of the evidence'' and explaining to the jury what is meant by satisfactory evidence, the trial court continued in its instructions as follows:

''So in this case, ladies and gentlemen of the jury, if you should find from a preponderance of the evidence that the defendant did wilfully,

maliciously, wrongfully and repeatedly drive his Cadillac automobile into said Hudson automobile then and there being driven by the plaintiff, and you further find that as a result thereof she suffered the injuries complained of, and you further find that as a result of such injuries she suffered physical pain and mental pain and anguish, and that said physical pain and mental pain and anguish was accompanied by fear and apprehension, and you further find that such injuries and resultant mental pain, anguish, fear and apprehension was the direct proximate result of said alleged wrongful acts on the part of the defendant, then you may award plaintiff such amount as damages as in your good judgment would afford her just and adequate compensation for such physical pain and mental pain and anguish and fear and apprehension as you may find she has suffered as a result of said acts of the defendant irrespective of whether such fears were based upon medical fact or not they may be considered by you in measuring the damage she has sustained, if you find she has sustained damage, as a result of the alleged acts of the defendant.

"* * * * * *

"And I further instruct you that to constitute a wilful and deliberate act, ill will and intention to injure are not necessary, but the actor must be conscious of his conduct and, from his knowledge of surrounding circumstances and conditions, of the fact that his conduct will naturally and probably result in injury.

"If you find from a preponderance of the evidence in this case that the defendant, Milton M. Arnstein, wilfully and deliberately caused his automobile to collide with the automobile which the plaintiff was then operating, and from the knowledge of the surrounding circumstances and conditions, knew or should have known that his said conduct would naturally and probably result in

injury, it is not necessary that you find that the defendant intended to injure the plaintiff or that he had any ill will toward her in order to constitute his act as wilful and deliberate.

■■ It was proper for the trial court to require plaintiff to elect as between the two causes of action alleged in her complaint. The two causes were inconsistent. The first cause of action alleges an assault and battery; the second was based on negligence. It is not essential to render one liable for assault and battery that the violence used be applied directly to the person. The force used may be either direct and immediate; that is such force as is applied directly by defendant; or indirect and consequential; that is, such force as is applied through some intervening agency, but of which defendant is, nevertheless, the proximate cause. 6 CJS, Assault and Battery, 802, § 9b.

■ An assault and battery is not negligence. The former is intentional and wilful; the latter unintentional. When defendant's conduct is wilful and intentional, it is no longer negligence, and when the injury sustained is the result of the wilful and intentional act of defendant, the defense of plaintiff's contributory negligence cannot arise. *Hawks v. Slusher,* 55 Or 1, 4, 104 P 883; *Mooney v. Carter,* 114 Colo 267, 160 P2d 390, 393; *Ruter v. Foy,* 46 Iowa 132; *Aiken v. Holyoke Street Railway,* 184 Mass 269, 272, 68 NE 238; *Kasanovich v. George et al.,* 348 Pa 199, 34 A2d 523, 525; 4 Am Jur, Assault and Battery, 199, § 154; 6 CJS, Assault and Battery, 804, § 11. In *Mooney v. Carter,* supra, the court stated the following rule:

"* * * In the case at bar plaintiff's injury was not caused by negligence, either of himself or of defendant, but by the admittedly intentional act of defendant in the application of force to her car

for the purpose of throwing plaintiff from the running board. * * * *The questions of negligence or contributory negligence are not involved.*" (Italics ours.)

■■ In removing from the jury's consideration plaintiff's second cause of action, the trial court also removed defendant's affirmative defense of contributory negligence. The defendant's answer then stood as a general denial of the material allegations of plaintiff's first cause of action. It was in effect a plea of "not guilty". Under this general denial, defendant was at liberty to offer any competent evidence to disprove the alleged intentional assault and battery. Evidence that the collision was caused solely by plaintiff's own acts, or to establish the fact that it was due to negligence on the part of either plaintiff or defendant, or both, rather than to an intentional and deliberate act on the part of defendant as charged, was competent and admissible under the general denial.

■ The question before us now is whether the trial court erred in refusing to give the jury the requested instruction previously quoted. Defendant contends that said instruction presented his theory of the case, and he was entitled to have the jury instructed thereon. He invites out attention to a well-established rule in this state that a party litigant is entitled to have the court instruct the jury upon his theory of the case as formulated in properly requested instructions which correctly state the law, and which are founded upon the pleadings and the proof in the case. He cites a number of decisions by this court in which the rule is announced. *DeLashmitt v. Journal Pub. Co.,* 166 Or 650, 114 P2d 1018, 135 ALR 1175; *Cline v. Bush,* 152 Or 63, 52 P2d 652; *Snabel v. Barber et al.,* 137 Or 88, 300 P 331; *Van Orsdol v. Hutchcroft,* 83 Or 567, 163

P 978; *West v. McDonald,* 64 Or 203, 127 P 784, 128 P 818; *Cerrano v. Portland Ry. L. & P. Co.,* 62 Or 421, 126 P 37; *Fiore v. Ladd,* 25 Or 423, 36 P 572.

In none of the cases cited by defendant was there involved an action for damages based upon a wilful and deliberate assault and battery. Most of them were cases involving alleged negligence and contributory negligence.

In the instant case the trial court fully and correctly instructed the jury that the burden of proof was upon plaintiff to establish the alleged assault and battery as a condition of her right to recover. If the evidence failed to establish the elements necessary to constitute such wilful and deliberate conduct on the part of defendant, plaintiff's cause of action would fail. No burden of proof was cast upon defendant. Defendant's theory in the case is that he is not guilty of the alleged assault and battery, and all the evidence he offered was designed to negate the charge against him. Negligence was not, and could not be, a defense, although evidence to show that the act was negligently, rather than intentionally, committed was proper for the purpose of disproving plaintiff's claims.

■ Having correctly instructed the jury as to the issues in the case as formed by the pleadings, and as to the burden of proof resting upon the plaintiff as a condition to her right to recover, the trial court was not required as a matter of law to instruct upon the purpose and possible effect of the evidence offered by defendant.

The situation is somewhat analogous to that in negligence cases where a request has been made that the court instruct upon unavoidable accident. We have held that general instructions to the effect that plaintiff must prove the defendant negligent sufficiently

covers the defense of unavoidable accident, and that, though affirmative in form, a pleading of unavoidable accident is not an affirmative defense, and the defendant does not have the burden of proving it. *Frangos v. Edmunds,* 179 Or 577, 611, 173 P2d 596; *DeWitt v. Sandy Market, Inc.,* 167 Or 226, 240, 115 P2d 184; *Kitchel v. Gallagher,* 126 Or 373, 383, 270 P 488.

■ We are of the opinion that the general instructions given by the court to the effect that plaintiff was required to prove that defendant was guilty of wilful, malicious, and wrongful conduct sufficiently covered defendant's theory that he was not guilty on the ground that the collision was negligently caused. We do not wish to be understood, however, as holding that a proper instruction along the lines indicated in defendant's request could not properly have been given by the court. That was a matter within the court's sound discretion. But it would be necessary that the instruction, if given, be a proper one.

However, the instruction as requested by defendant was not, in any event, a proper instruction, in that it was not complete, and its giving to the jury would have tended to confuse the real issues in the case.

It must be remembered that the trial court had repeatedly told the jury that negligence and contributory negligence as issues were out of the case entirely. This had been emphasized to the jury. It is perfectly obvious that if the court had then given defendant's requested instruction as written, without any qualifications or explanation, the jury would indeed have been confused. If the requested instruction had pointed out that if the jury found that the collision was caused by negligence on the part of defendant, or plaintiff, or both, *instead of being caused by the wilful and intentional act of defendant as claimed by the plaintiff,* then,

and in that event, plaintiff could not recover, it would not have been objectionable.

■ It is a well-recognized rule of law that a requested instruction must be calculated to give the jury an accurate understanding of the law, having reference to the phase of the case to which it is applicable. The trial court may properly refuse a requested charge which is unintelligible, incomplete, or argumentative, or which might prove misleading or confusing to the jury. *Porter Const. Co. v. Berry et al.*, 136 Or 80, 96, 298 P 179; *Russell v. Oregon R. & N. Co.*, 54 Or 128, 140, 102 P 619; 53 Am Jur., Trial, 422, § 525; 5 RCL Supp, Intructions, 3666,§ 44.

In *Russell v. Oregon R. & N. Co.*, supra, the late Justice McBride, in his customary clear and concise words, stated the rule as follows:

"Unless an instruction is so definite as to enable a man of average intelligence to understand it, it ought to be refused as misleading and tending to confuse, rather than instruct, a jury. A court is not bound to give, and ought not to give, an intructuion, even though it states the law correctly, which is not couched in language sufficiently untechnical to be comprehended by the average juror. Requests for instructions are permitted so that the jury may be fully informed as to the law, and not to enable litigants to ensnare an unwary court into technical error which will secure a reversal in case of defeat."

■ The trial court did not err in refusing to give the requested instruction in question.

As his second assignment of error, defendant contends that the trial court erred in refusing to give the jury his requested instruction numbered V, reading as follows:

"I instruct you that there is no evidence of any

permanent injury to the plaintiff in this case. I therefore instruct you to disregard the allegations of permanent injury in your deliberations upon the case."

Under this assignment of error, defendant argues that there is no substantial evidence in the record tending to establish the probability of any permanent injury suffered by plaintiff as the proximate result of the collision.

In outlining the facts of this case, we called attention to the testimony in the record respecting plaintiff's injuries. We observed that all her symptoms which it is claimed existed at the time of trial were entirely subjective; that is, dependent entirely upon her own word.

■ We are of the opinion that this testimony by plaintiff was insufficient to justify the submission of the question of permanent injury to the jury. There is no evidence in the record from which it can be said there is a reasonable probability of plaintiff's injuries being permanent. Plaintiff does not know, nor could she know, whether her nervous condition is permanent, or if permanent, whether it was caused by the collision, by childbirth, or by domestic difficulty which she suffered a few months following the accident. To submit the question of permanent injury under the evidence in this case would be to turn the jury loose in the domain of pure speculation. The only affirmative testimony in the record on the question of permanent injuries, and which was given by a duly licensed physician and surgeon who was fully qualified to express an opinion, is to the effect that plaintiff's injuries are not permanent.

■ Under prior decisions of the court, a rule has been established that expert testimony is not necessary

in all cases where permanent injury is claimed, as a condition for submitting the question to the jury. If the evidence is sufficient, without expert testimony, to justify a finding that there is a probability of permanent injury, we have uniformly held that the question is one that is properly submitted to the jury. One of our latest decisions upon that question is to be found in the case of *Senkirik v. Royce et al.*, 192 Or 583, 593, 235, P2d 886.

It will be noted that in that case there were objective symptoms in addition to those which were purely subjective. We observed that there was testimony at the time of trial that plaintiff still suffered severe pain and swelling in his injured leg, and his leg and the scar thereon, caused by the compound fracture which he had suffered, and showing swelling, were exhibited to the jury. We also called attention to the fact that many X-rays were admitted in evidence. Inasmuch as approximately 18 months had elapsed between the date of the accident and the time of trial, we thought the evidence sufficient to justify submitting the question of the permanence of plaintiff's injury to the jury, even though plaintiff's claim therefor was not supported by expert testimony.

But a careful review of our prior decisions fails to disclose a single instance in which the question of permanent injury was submitted to a jury, where the only testimony respecting it was of the character present in the instant case.

However, from what we have said, it does not ensue that the trial court committed prejudicial error in refusing to give the requested instruction quoted above. We have repeatedly held that it is not necessarily prejudicial error for the court to refuse to give a requested instruction that is substantially covered by

the instructions that were given. *Stuart v. Occidental Life Ins. Co.*, 156 Or 522, 539, 68 P2d 1037.

In one of the court's instructions quoted supra, it will be noted that the court told the jury the matters it might consider in fixing the amount of plaintiff's compensatory damages, in the event plaintiff was entitled to recover. Later the court further instructed the jury:

"I further instruct you that in determining whether or not plaintiff should be awarded damages under the instructions previously given you, you may take into consideration the fact that the plaintiff was—I believe it is conceded, gentlemen, that the plaintiff was pregnant at the time of this accident— that the plaintiff was more than eight months pregnant at the time of the collision, and any fear, apprehension, mental anguish and suffering on her part as the result of the injuries sustained in said collision, if you find there were any such.

"And I further instruct you in this connection that plaintiff would be entitled to recover damages for fear and apprehension for the condition of the child suffered before the child was born but not afterward."

It thus appears that in its instructions upon the measure of damages, the court omitted entirely any mention of permanent injury.

■ We do not wish to be understood as holding that it would not have been proper for the court expressly to take that issue from the jury as requested; in fact, in any case where the evidence is insufficient to justify the submission of the issue of permanent injury to the jury, it is better practice for the court to take the question directly from the jury pursuant to a proper request therefor. However, in the light of the definite instructions that it did give upon the measure of dam-

ages, we cannot say that the court committed prejudicial error in refusing to give defendant's requested instruction.

We are not unmindful of the fact that at the outset of its instructions to the jury, the trial court directed the jury's attention to the pleadings, reading substantially all of the allegations contained in plaintiff's first cause of action. After outlining the injuries which she claimed she had sustained and in detail alleging the pain and anguish, mental and physical, she had endured, plaintiff alleged: "that the result of the plaintiff's condition of nervous shock and mental anguish and apprehension still exists and plaintiff believes and therefore alleges that the same will be permanent, all to her damage * * *."

In pointing out the purpose of the pleadings, the court told the jury:

"You will take these pleadings to your jury room for reference as a means of settling any dispute which may arise in your deliberations as to what the parties have stated in these pleadings. I instruct you, however, that these pleadings, as I have inindicated, are in no sense evidence in this case, and serve but one purpose, which is, as I have said, in order that you may determine if necessary what the pleadings state."

It is clear that in reading the pleadings to the jury, the court was in no way endeavoring to state as a matter of law the measure of damages to be applied in the case. At most, the court merely told the jury that in the complaint it was alleged that plaintiff's injuries were, in plaintiff's opinion, permanent. But what we have said before respecting the requested instruction applies with equal force in connection with this matter.

■ It must be presumed that the jury followed the instructions given it by the court upon the measure of damages, and that it did not go outside those instructions in determining the amount of its verdict. In those instructions the court was stating the law applicable to the case. In stating what was contained in the pleadings, it was not instructing upon any point of law. In this connection we emphasize again a part of the court's instructions quoted supra:

"* * * In the performance of that duty you are required to observe and apply the principles of law as given you in these instructions, irrespective of what your independent views of the law might be."

■ We have repeatedly held that the instructions of a trial court must be viewed as a whole, and when they are substantially correct and could not have misled the jury to appellant's prejudice, a judgment will not be reversed because one instruction when considered alone may be subject to criticism, or because a particular requested instruction should have been given. *Parmentier v. Ransom*, 179 Or 17, 24, 169 P2d 883; *Hornby v. Wiper*, 155 Or 203, 211, 63 P2d 204; *Dockery v. Gardner*, 141 Or 64, 70, 15 P2d 481.

Considering in their entirety the instructions given by the trial court, we are of the opinion that the jury was fully, fairly, and correctly instructed upon all the material issues in the case.

Defendant's third and last assignment of error is based upon his contention that the trial court erred in denying a motion for a mistrial. This motion was made upon the conclusion of the court's instructions to the jury and is based upon an occurrence in the court at that time.

One juror had asked the court to clarify its instruction upon proximate cause, and when that was done, the following took place:

"MRS. BANCE (a juror): Could I ask a question. Insurance companies don't put any claims in in a case like this?

"THE COURT: Now, that is a question you should not have asked.

"MRS BANCE: I see, I am sorry.

"THE COURT: Because it is something that is not in this case by the pleadings or evidence, and I am instructing the members of the jury at this time, and don't misunderstand me, I have forgotten your name, what is your name?

"THE JUROR: Mrs. Bance.

"THE COURT: This is no reflection on you, but you are wholly to disregard the statement just made by Mrs. Bance because that comes within the instruction I gave you, it is substantially the same as the instruction I gave you that you are not to permit any extrinsic matter to influence your verdict. So that you can understand that this statement made by the juror is an extrinsic matter because there is no evidence in this case involving insurance in any way whatsoever. Is that clear?

"A JUROR: Very clear."

This question of insurance was not injected into the case by an attorney, party or witness, so the problem raised by defendant's motion for a mistrial is not based upon any misconduct on the part of a party, witness, or attorney, as has been the case in most, if not all, prior tort actions in which we have discussed the matter of insurance. It is, of course, unfortunate that the juror asked the question. However, as the record discloses, the trial judge immediately instructed the jury to disregard it. In denying the motion for a mistrial, the trial judge evidently was of the opinion

that his cautionary instruction was sufficient to, and did, destroy any possible prejudice that might have been raised by the question. It is manifest that he was in much better position to judge whether the question was actually prejudicial than are we, confined as we are to a cold, printed record. The record discloses further evidence to the effect that the trial judge did not believe any actual prejudice was caused by this occurrence, in that he denied the motion of defendant for a new trial. One of the grounds assigned in the motion was this matter of insurance. In most, if not all cases, the granting or denying of a motion for mistrial rests largely within the sound discretion of the trial judge. We should not disturb its finding upon such a motion unless we can say affirmatively from the record that there has been an abuse of discretion. We are not prepared to say that in this case.

We find no prejudicial error in the record justifying a reversal of the judgment of the trial court.

The judgment is affirmed.