Argued February 1, affirmed April 26, 1967

POOSCHKE, *Respondent, v.* UNION PACIFIC
RAILROAD COMPANY, *Appellant.*

426 P. 2d 866

*Walter J. Cosgrave,* Portland, argued the cause for appellant. With him on the briefs were Maguire, Shields, Kester & Cosgrave, Randall B. Kester and Austin W. Crowe, Jr., Portland.

*Carlton R. Reiter,* Portland, argued the cause for respondent. With him on the brief were George M. Joseph and Reiter, Day, Anderson & Wall, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

DENECKE, J.

This is an action for personal injuries brought under the Federal Employers' Liability Act, 45 USCA § 51 et seq. Plaintiff recovered a verdict for $125,000 upon which judgment was entered, and defendant appeals.

Plaintiff was the operator of a locomotive crane, i.e., a crane erected upon a railroad car which could move under its own power. He was unloading ballast from a gondola car. Smoke came out of the crane machinery. Plaintiff went from his operator's cab to learn what caused the smoke, the moving clutch

caught his pants, his leg was drawn into the moving machinery and injured.

## I

The case was submitted to the jury upon an amended complaint the allegations of negligence of which were as follows:

"1) *It provided plaintiff with a locomotive crane which was mechanically insufficient and in a state of disrepair and which emitted smoke;* and, in addition, said locomotive crane was defective in that its moving parts were exposed and unprotected;

"2) *Defendant provided plaintiff with a locomotive crane which was in an improper and unsafe condition in that one of the bands thereof overheated, burned and smoked;* a part of the machinery with a larger cotter pin rotated with the clutch and moving clutch and cotter pin were uncovered and exposed." (Emphasis added.)

At the close of the evidence the defendant moved to strike those allegations of negligence charging that the crane was in disrepair and smoked and the crane was unsafe in that one of the bands burned and smoked, all upon the ground that there was no evidence to support such allegations. (The allegations moved against are those in italics.)[1] The defendant conceded that there was evidence to support the remaining portion of the allegation,—that is, that the moving parts, the clutch and cotter pin, were uncovered and exposed.

The crane was powered with a diesel engine which supplied the power for locomotion and the operation of the boom. The engine and the machinery which oper-

---

[1] Defendant chose not to move on the ground that the allegations were repetitious or were not a cause of plaintiff's injuries.

ate the boom were to the rear of the cab. At the time of the accident the oiler saw some smoke coming out of the area to the rear of the cab in the vicinity of the machinery. The oiler told plaintiff that one of the bands was smoking. The roadmaster heard someone say there was some smoke coming out of the crane, he saw "heat waves" or "fumes" and told plaintiff to go back and check it. Plaintiff went back, inspected it, and could see nothing wrong. He testified, however: "There was something wrong with it [the crane] at the time of the smoke, yes." On deposition he stated that he "imagine[d] that something got under a band or something and he heated up or something * * *."

This is all the evidence to support the questioned allegations of negligence.

■ Liability being based upon a federal statute, United States Supreme Court decisions are controlling, and lower federal court decisions are more persuasive than they are if only common-law questions are involved.

■ The statute makes negligence the basis of recovery. In the case of defective machinery the railroad is liable only if it knows or should have known of the defect. *Urie v. Thompson,* 337 US 163, 69 S Ct 1018, 93 L ed 1282, 1297 (1949).

The appearance of unusual smoke and the testimony of plaintiff and the oiler would substantiate a finding by the jury that the crane was defective. Under the decisions of the United States Supreme Court and the lower federal courts, proof of the defect also appears to be sufficient evidence to have the jury pass upon the issue of whether the railroad should have known of the defect. It is immaterial whether this result is phrased in terms of "liability without fault"

or of a workmen's compensation statute, as some charge it really is,[®] or in terms of permissible inferences that can be drawn by the jury.

In *Lavender v. Kurn*, 327 US 645, 66 S Ct 740, 90 L ed 916 (1946), the court stated:

> "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. * * *" 327 US at 653.

Two cases are illustrative of the reasoning in federal employer liability cases. In *Fassbinder v. Pennsylvania Railroad Company*, 322 F2d 859 (3d Cir 1963), the plaintiff conductor was injured when he tried to close a coach door which stuck because of a defective mechanism known as a "dog." The trial court set aside a verdict for plaintiff because it believed there was no evidence that the railroad should have known of the defect. The Court of Appeals reversed, holding that the doctrine of res ipsa loquitur furnished a basis for submitting the issue to the jury. The court stated:

> "Here the defendant had exclusive control of the railroad coach and its appurtenant mechanisms; the accident was such as in the ordinary course of things would not have occurred if the defendant had used proper care with respect to the mechanism which precipitated the plaintiff's injury, and as a consequence it afforded reasonable evidence, in the absence of explanation by the defendant, that

---

[®] Wright, *The Employers' Liability Act: Does the Supreme Court Want It Repealed?*, 45 ABA J 151, 202 (1959); Sinkler v. Missouri P. R. Co., 356 US 326, 78 S Ct 758, 2 L ed2d 799, dissent at 804 (1958).

the accident arose from the defendant's want of care. * * *." 322 F2d at 862.

The Sixth Circuit held likewise in *Miller v. Cincinnati, New Orleans and Texas Pacific Ry. Co.,* 317 F2d 693 (6th Cir 1963). The plaintiff in that case was injured when a water hose discharged although the trigger which is meant to activate the discharge was not depressed. These facts permitted an inference that the hose nozzle was defective. The court held the inference of a defect also supplied an inference that the railroad should have known of the defect. The court said:

> "It is not questioned here but that plaintiff's proofs were, under res ipsa loquitur, sufficient to establish that the hose and its nozzle were defective at the time of plaintiff's injuries. Having gone this far, does the doctrine permit supplying by inference the other essential to defendant's negligence, viz., actual or constructive notice of such defective appliance. We think it does. As stated in Sweeney v. Erving, 228 U. S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815, 819, '* * * [R]es ipsa loquitur means that the facts of the occurrence warrant the inference of *negligence* * * *.' (Emphasis supplied.) If application of the doctrine permits an inference of *negligence,* such inference must necessarily include all the essential elements of negligence, including here an inference that defendant had actual or constructive knowledge of the defective condition of the nozzle." 317 F2d at 696.

■ We hold that under the decisions interpreting the federal statute there was evidence that the crane, particularly the band, was defective and that the railroad should have known of such defect.

■ The allegations of negligence set forth earlier herein were the result of amendments to conform to

the proof made after plaintiff had rested and defendant contends the trial court's permitting such amendments was error. We find the allowance of the amendment within the permissible scope of the trial court's discretion as that discretion is outlined in *Morrill v. Rountree,* 242 Or 320, 408 P2d 932 (1966).

## II

The railroad contends the giving of the following instruction was error:

> "Ordinarily an employee is not required to make an inspection of equipment furnished to him by his employer. In the absence of knowledge or notice to the contrary, or of circumstances that would cause a reasonably prudent person in like position to the contrary, an employee may assume that ordinary care has been exercised in furnishing reasonably safe appliances."

Defendant's exception is primarily grounded upon the proposition that the plaintiff, as the person in charge of the crane, was, according to the railroad's rules, under a duty to make an inspection.

■ The federal act does not have a vice-principal provision as does the Oregon Employers' Liability Act. *Galer v. Weyerhaeuser Timber Co.,* 218 Or 152, 344 P2d 544 (1959). A rule under the federal act somewhat akin to this court's interpretation of the vice-principal rule of the Oregon act, was discarded in *Tiller v. Atlantic Coast Line R. Co.,* 318 US 54, 63 S Ct 444, 87 L ed 610 (1943):

> "* * * Aside from the difficulty of distinguishing between contributory negligence and assumption of risk many other problems arose. One of these was the application of the 'primary duty rule' in which contributory negligence through violation of a company rule became assumption of risk.
> * * *

"It was this maze of law which Congress swept into discard with the adoption of the 1939 amendment to the Employers' Liability Act, releasing the employee from the burden of assumption of risk by whatever name it was called. The result is an Act which requires cases tried under the Federal Act to be handled as though no doctrine of assumption of risk had ever existed." 318 US at 63-64.

■ An employee under the federal act, including an employee in charge of the particular work, has no duty to inspect unless he is put on notice as a reasonably prudent man that a device may be defective.[9] The Norland (*Loe v. Goldstein*), 101 F2d 967 (9th Cir 1939), was an action for damages brought under the Jones Act. The plaintiff was the "fish boss" on the fishing vessel. The injury occurred in plaintiff's cabin when plaintiff descended the stairs backwards into his cabin and fell through a hatch in his cabin which had been opened. The court said:

"* * * And the rule is not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or those for whose conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care for his safety until notified to the contrary. * * *." 101 F2d at 974.

### III

■ The trial court permitted the plaintiff to climb over the counsel table to illustrate plaintiff's movements in getting to and from the place where he looked for the cause of the smoke. Defendant contends this was a maneuver to again show the jury the plaintiff's

---

[9] We do not include in this statement an employee whose specific and assigned duty it is to inspect and determine if a device is defective.

disability and his injured limb and was error. Whether or not to permit a demonstration is usually a question that is best answered by the trial court. *Hassebroek v. Norman,* 236 Or 209, 211, 387 P2d 824 (1963).

■ We gather from the trial court's remarks that it would not have permitted this particular demonstration if it had known the course it took. However, even on hindsight, we do not have an adequate record to pass on the trial court's ruling. There are no pictures of the demonstration and no description of how the plaintiff accomplished the maneuver and what appearance he gave to the jury. We realize it is difficult to preserve an adequate record of such an occurrence and this is probably one reason why the matter of demonstrations is largely left to the discretion of the trial court.

## IV

■ Defendant moved for a mistrial because tears came to plaintiff's eyes when plaintiff's counsel asked plaintiff how looking at his injured leg affected him. The court denied the motion.

The defendant also contends that the trial court erred in overruling its objection to the plaintiff displaying his injured leg to the jury after it had been tightly wrapped in a bandage.

Defendant further objects to the court's admission of a colored photograph of plaintiff's leg taken just after plaintiff left the hospital.

These three rulings also are in areas in which the appellate court very rarely substitutes its judgment for that of the trial court. *Hendricks v. Sanford,* 216 Or 149, 151-152, 337 P2d 974 (1959), display to jury of injury to plaintiff's back approved; *Hays v. Herman,* 213 Or 140, 145, 322 P2d 119 (1958), 69 ALR2d

947, affirming the granting of a new trial because of plaintiff's weeping; and *Knapp v. Standard Oil Co.,* 156 Or 564, 576, 68 P2d 1052 (1937), photographs of damaged car held admissible.

The rulings were not in error.

## V

■ Plaintiff was asked by his counsel how many days a week during his years of work for the railroad he was away from home and how many days he was at home. Defendant contends that the question solicits irrelevant material and is prejudicial as it tends to make defendant appear to be a harsh employer.

The conditions under which plaintiff would have to work are relevant upon the issue of his capacity to work after his injury.

There was no error.

## VI

Lastly, defendant contends the trial court erred in denying its motion for a new trial upon the ground: "Excessive damages given under the influence of passion or prejudice as a result of appeals to such emotion by plaintiff and his attorney."

Assuming, without deciding, that the trial court's action is a proper subject for an assignment of error, and further assuming that this court has power under the federal statute to set aside a verdict on such ground, we have already held in this case that the rulings of the trial court in regard to the actions of plaintiff and his counsel which defendant charges were appeals to the jury's passion and prejudice were not in error and, therefore, are not grounds for a new trial.

Affirmed.