Argued April 7, affirmed June 23, 1971

DeSPAIN, *Respondent, v.* BOHLKE,
*Appellant.*

486 P2d 545

*Ridgway K. Foley, Jr.,* Portland, argued the cause for appellant. With him on the briefs were Souther, Spaulding, Kinsey, Williamson & Schwabe, and James B. O'Hanlon, Portland.

*Gerald R. Pullen,* Portland, argued the cause for respondent. With him on the brief were James E. Redman, James R. Carskadon, Jr., and Redman & Carskadon, Portland.

Before McALLISTER, Presiding Justice, and DENECKE, HOLMAN, HOWELL, BRYSON, and SCHWAB, Justices.

BRYSON, J.

This is an action by plaintiff to recover damages for personal injuries she sustained in a two-car automobile accident. The accident occurred January 14, 1969. After both parties rested, the defendant admitted liability and the case was submitted to the jury to determine the amount of plaintiff's damages, if

any. The jury returned a verdict in favor of plaintiff for general and special damages. The defendant appeals.

1. Defendant's first two assignments of error are based on the trial court's refusal to grant a mistrial on motion of the defendant. The first assignment of error is that the court refused to grant defendant's motion for a mistrial upon plaintiff's doctor unnecessarily interjecting insurance into the proceeding.

Plaintiff's expert medical witness, on cross-examination, gave the following answers to defense counsel's questions:

"Q [Defendant's counsel] Do you believe that sometimes the continuation of litigation can cause symptoms to exist where, when the litigation is over, some of these symptoms are moderate?
"A Well, I would have to qualify that, if I am permitted.

"Q Certainly.
"A You asked two questions there. She was not particularly nervous. Litigation, in itself, I find in a patient litigation can aggravate a patient's symptoms, and for this reason: Apprehension—litigation, especially in some instances where patients are—oh, I don't know the term—the common lay term would be 'hounded' by the insurance company, and the like—creates a sense of nervousness, insecurity, in the life of these patients; and many of these patients do, indeed, get quite nervous. When people are nervous, it magnifies—it doesn't create—there is a difference; it doesn't create, but it does magnify the symptom of pain * * *."

The matter of insurance is a collateral issue in the case at bar and is irrelevant to the issues framed by the pleadings. The answer given on cross-examination was not particularly responsive to counsel's ques-

tions; however, the witness did not say that this defendant was insured. The mere mentioning of the words "insurance company" does not, of itself, necessarily constitute error. *Blake v. Webster Orchards,* 249 Or 348, 437 P2d 757 (1968); *Johnson v. Hansen,* 237 Or 1, 389 P2d 330 (1963), *rehearing denied,* 390 P2d 611 (1964); *Melcher v. Connell,* 119 Or 626, 250 P 742 (1926).

The defendant argues, without reference to any evidence of such in the transcript, that:

> "Insertion of insurance contaminates the entire proceeding. It is particularly inexcusable when uttered by a professional witness, one who knows court procedure and commonly testifies for plaintiffs. Dr. Goodwin may dislike real or imagined tactics of insurance companies, but he knew his answer was improper and damaging to the defendant."

It is only by so diagnosing the character and mental process of plaintiff's expert witness that he arrives at the conclusion that the issue of insurance was intentionally injected into the proceeding and was therefore prejudicial. This court does not feel that it has such power of diagnostic perception. The record seems quite clear that plaintiff or plaintiff's counsel did not intentionally inject the words "insurance company" into the proceedings. The ultimate question raised by this assignment of error is whether the defendant was prejudiced and, therefore, denied a fair trial. The probability of prejudice to the defendant is too remote to cause reversal. *See* Justice O'CONNELL's specially concurring opinion in *Johnson v. Hansen, supra* at 14-18.

2. The second assignment of error is that the court refused to grant defendant's motion for mistrial be-

cause of the plaintiff's unjustified weeping during direct testimony. In *Hays v. Herman,* 213 Or 140, 145, 322 P2d 119, 69 ALR2d 947 (1958), this court stated:

"* * * [D]amage cases frequently involve matters of high emotional content to the parties * * *, we obviously cannot say that any display of emotion whatever is improper. To so hold might mean that the case could never be tried. But it is equally obvious that an undue emotional outburst may under some circumstances amount to misconduct and may prevent a fair and impartial consideration by the jury. The line between the two cannot be drawn as a matter of law, but it must rest largely in the discretion of the trial court * * *."

Plaintiff alleges that as a result of the injuries she was "nervous and distressed." The evidence indicates she became hysterical and emotional at the time of the accident. When the plaintiff began crying, counsel for defendant asked to be heard in chambers. After the motion and argument, the court admonished plaintiff's counsel to get right down to what happened after the accident. There is no indication of any further episode of weeping. The court instructed the jury:

"* * * You are not to allow bias or prejudice or sympathy any place in your deliberations * * * to weigh the evidence calmly and dispassionately * * *."

We cannot say that the court abused its discretion when it denied defendant's motion for mistrial on this ground. *Johnson v. Hansen, supra* at 8; *Pooschke v. U. P. Railroad,* 246 Or 633, 642-43, 426 P2d 866 (1967).

3. Defendant next assigns as error the court's failure to grant defendant's motion to strike medical testi-

mony regarding expenses and suffering incurred after October 1969, when plaintiff suffered a second injury. This is explained by the plaintiff's testimony as follows:

"Q [Plaintiff's counsel] With respect to the low back problem, the lumbar back, how has the progress been in this area?
"A Very slow.

"Q Could you describe what problem you had in January, 1969, and what changes you have noticed up to the present time?
"A What problem?

"Q Well, the degree of the problem you were having in January, 1969, and compare that and your progress up until today.
"A You mean after the accident?

"Q Yes.
"A Well, it seems much better now, of course. It is just that—by summer, I was feeling much better. I still had the low back pain there; and, with any slight exertion on my back, it would start hurting quite bad, and that would—and the left leg would also hurt. And it seemed to get well—by not using my back, by staying down and taking care of it, it would be fine; and then—it must have occurred—I strained my back slightly when I was making the beds, [established on cross-examination as October 1969] and it hurt for about two months, very much so."

Defendant contends that plaintiff's testimony establishes that the initial back injury sustained in the automobile accident of January 14, 1969, had healed by the summer of 1969, and that she reinjured her back the following October 1969 when she was "making the beds," and argues that plaintiff's pain and disability after October 1969 are directly related to the October accident rather than to the automobile acci-

dent in January. For this reason, defendant moved to strike all medical testimony referring to plaintiff's back injury after October 1969.

Two expert medical witnesses, who had treated plaintiff following the accident, testified at the trial. Both stated that the low back pain of which she complained since the accident was due to a slippage of the fifth lumbar vertebra on the first sacral portion of the spine, referred to as a "spondylolisthesis." Both doctors testified that prior to the accident plaintiff had a structurally weak lower back caused by a congenital defect in this area. Prior to the automobile accident, with the exception of a minor backache during the last months of her pregnancy in 1965, plaintiff experienced no difficulty with her back. There is evidence that after the accident plaintiff was unable to perform routine housework without pain and was receiving medical treatment for a back condition up to the date of trial. Both doctors testified that plaintiff's back pain and disability, of which she complained, were caused by the accident. In *Ferrante v. August,* 248 Or 16, 432 P2d 167 (1967), we held:

> "In an action to recover damages for personal injuries the tortfeasor is liable for all the natural, direct and proximate consequences of his wrongful act or omission * * * where the injured person meets with a subsequent accident which would not have occurred but for the original injury the defendant may be held liable for the enhancement of plaintiff's damages caused by the subsequent accident * * *." 248 Or at 20-21, 432 P2d at 169.

*Also see* 25 CJS 653, *Damages* § 20. The evidence is that the January accident "triggered" what had theretofore been a harmless structural defect in plaintiff's back which caused her no trouble, but since the auto-

mobile accident the back had been a source of constant pain. On not less than five occasions while the trial court was instructing the jury on the question of general damages, he told the jury that they could allow damages only for injuries suffered as a result of the defendant's negligence.

In our opinion, there is no evidence from which the trial court could conclude, as a matter of law, that the October incident was the cause of plaintiff's suffering after the October 1969 date. The matter was properly left to the judgment of the jury. There was sufficient evidence from which the jury could conclude that but for the initial back injury sustained by plaintiff in the automobile accident, the subsequent strain in October 1969 would not have occurred.

4. There is a further ground for denying the defendant's motion to "strike the medical testimony." Plaintiff's testimony was offered after the two expert medical witnesses testified. After the plaintiff testified, two more witnesses were called for the plaintiff, defendant called his only witness and then the parties both rested. Defendant knew of the October bed-making incident when the plaintiff testified as above quoted. He did not make his motion to strike the medical testimony until three additional witnesses had testified and both parties had rested. The general rule is that a motion to strike improper testimony must be made as soon as the ground for such a motion is disclosed. *Wallender v. Michas,* 256 Or 587, 475 P2d 72 (1970). The motion was properly denied.

The last two assignments of error concerned the trial court's failure to instruct the jury that the plaintiff was not entitled to recover for prior physical

conditions, and for failure to instruct the jury that the defendant was not responsible for pre-existing injuries or for injuries suffered subsequent to the accident but which were unrelated to the accident. We have examined the instructions given by the court to the jury pertaining to damages and conclude that both requested instructions were adequately covered in other language employed by the court. When the defendant's requested instructions, as set forth in his brief, are compared with those given by the trial court, it can be seen that each element in the former has a counterpart in the latter. This assignment of error falls under the rule of *Wills v. Petros et al*, 225 Or 122, 126, 357 P2d 394, 396 (1960):

> "* * * [I]t is not error for the trial court to refuse to give a requested instruction even though the refused instruction constitutes an accurate statement of the law when the substance of the instruction given [sic] can be found in any other instructions given [Citing cases]." 225 Or at 126.

In the absence of evidence to the contrary, we must assume that the jury followed the court's instructions, and we believe that the matters requested were covered by the court's instructions.

The judgment is affirmed.

McALLISTER, J., specially concurring.

When defendant's counsel elected to cross swords with an expert adverse witness, he assumed the risk inherent in the encounter. Defendant attempted to elicit from plaintiff's doctor a statement that plaintiff's recovery would be accelerated if the case was settled. Counsel should not have been surprised when the doctor declined to help prove defendant's case.

Both the question and answer were in the ab-

stract. There is no statement that this defendant was insured or that this defendant's insurance company hounded this plaintiff. I agree with DENECKE, J., that under the circumstances there was room for the trial court to find the error non-prejudicial.

DENECKE, J., specially concurring.

I construe the majority opinion concerning the first assignment of error to hold that there is no persuasive evidence that plaintiff's counsel intentionally injected insurance into the case and, therefore, a mistrial is not mandatory; that it is not necessary to infer from the witness's statement that the defendant was insured and his insurance company "hounded" the plaintiff; therefore, there was a basis for the trial court's apparent finding that the defendant was not prejudiced by the testimony. This reasoning I find in accord with *Blake v. Webster Orchards,* 249 Or 348, 437 P2d 757 (1968).

HOWELL, J., joins in this specially concurring opinion.

SCHWAB, J., Pro Tempore, dissenting.

I cannot concur in that portion of the opinion of the majority which holds that it was not error to refuse to grant a mistrial when the plaintiff's doctor on cross-examination unnecessarily referred to litigants being, in some instances, "* * * 'hounded' by the insurance company * * *."

This court, as pointed out in *Blake v. Webster Orchards,* 249 Or 348, 354, 437 P2d 757 (1968), has "* * * not always been precise in our statement of the rules covering the consequences of the introduction of insurance * * *." The court then goes on to hold:

"* * * [W]e have adhered to the following

basic principles: If insurance is not relevant and is intentionally injected into the case, the trial court must grant a motion for mistrial and if it does not it has committed reversible error. *Leishman v. Taylor,* 199 Or 546, 263 P2d 605 (1953). If insurance is not relevant, but has come into the case through inadvertence, whether or not to grant a mistrial is in the discretion of the trial court. *Denton v. Arnstein,* 197 Or 28, 54-56, 250 P2d 407 (1952). This discretion is largely uncontrolled by this court. We permit the trial court to decide whether or not prejudice has been created. *Wells v. Morrison,* 121 Or 604, 256 P 641 (1927)." 249 Or at 354-55.

I do not believe that it is proper (1) to differentiate between intentional or inadvertent injection of insurance, or (2) to provide no standard by which a decision can be made as to when the injection of insurance is prejudicial.

The reason for the rule against the injection of insurance is to insure, so far as possible, that the defendant gets an unprejudiced determination of his liability. *Johnson v. Hansen,* 237 Or 1, 389 P2d 330, 390 P2d 611 (1964). It follows that mention of insurance is no more or no less prejudicial because it is intentionally or inadvertently mentioned. Intent is not relevant to the determination of prejudice.

Prejudice, like obscenity, is in the mind of the beholder. There is no way by which a court can accurately measure the mental reactions of jurors. *Johnson v. Hansen,* supra, at 10. But we must, nevertheless, fashion some standard because we are thus far committed to the concept that:

"In the *ordinary case,* the presence or absence of insurance is not only irrelevant, but * * * is

prejudicial * * *." *Johnson v. Hansen,* supra, at 4. (Emphasis supplied.)

I would therefore adopt a rule such as:

The unnecessary injection of insurance, be it intentional or inadvertent, is prejudicial and ground for a mistrial unless the court can point to some special circumstance negating the likelihood of prejudice.

Such a circumstance might be that the defendant is a major national corporation. Undoubtedly there are others.[1]

The application of the rule I here propose would result in a reversal in the case at hand. Not only was the comment of the medical witness unnecessary—not only did it inject the existence of insurance into the case—but it inferred that the insurance company improperly "hounded" the plaintiff, to her detriment. This in a case in which liability was admitted and the only questions were the extent of the plaintiff's injury and the compensation to be awarded.

It can be argued that the witness did not refer to the present case but was only speaking of injured plaintiffs generally in situations in which the defendants had liability insurance. Such an argument is too thin. No juror would likely so understand it. A juror would have to come to the conclusion either that the response was germane to the case or the court was permitting irrelevant evidence.

---

[1] Such a rule would not give free rein to the intentional and unnecessary injection of insurance into every case in which it could be affirmatively said that the mention of insurance was not prejudicial. Deliberate misconduct can be dealt with in many ways.

There are no special circumstances in this case from which we can affirmatively determine that the mention of insurance was not prejudicial.

For the foregoing reasons I dissent.

HOLMAN, J., joins in this dissent.