Argued September 13, affirmed October 24, 1978

# OSBORNE, *Respondent/Cross-Appellant,*
## *v.*
# HAY et al, *Appellants/Cross-Respondents.*
## (TC 75-0684, SC 25545)
### 585 P2d 674

Glenn H. Prohaska, of Day, Prohaska & Case, P.C., Portland, argued the cause and filed the briefs for appellants/cross-respondents.

Keith Rodman, Eugene, argued the cause and filed a brief for respondent/cross-appellant.

Before Denecke, Chief Justice, and Tongue, Bryson and Linde, Justices.

TONGUE, J.

**TONGUE, J.**

This is an action for damages for fraud brought by the purchaser of a motel against the real estate brokerage firm, individual broker, and the salesman who sold it to her. Plaintiff alleges that defendants misrepresented the income of the motel on a "data sheet" submitted by them to plaintiff.

The case was tried before a jury, which returned a verdict in favor of plaintiff and against the real estate brokerage firm and the salesman for $38,000 in general damages, and $21,809.91 in special damages. The jury also awarded a verdict for $30,000 in punitive damages against the real estate brokerage firm and $15,000 in punitive damages against the salesman. These defendants appeal from the judgment on that verdict. Plaintiff cross-appeals from the granting of an involuntary nonsuit in favor of the individual broker.

Defendants first contend that:

"The jury was improperly instructed on the correct measure of damages in a fraud action. Although the jury was instructed that the measure of damages was the difference in the fair market value of the motel and what the plaintiff paid for it, i.e., the 'out of pocket' measure of damages, the jury was also allowed to consider other rescission-type damages under the guise of 'special damages' which duplicated the general damages and in effect permitted double recovery."

The instructions complained of were as follows:

"The damages which you may consider are as follows:
"* * *

"(b) Special Damages, which may include any of the following items of expenditures;

"First, 'Filing fees, trial fees, hearing fees and Supreme Court fees: $367.68'

"Second, 'Process server's fees: $127.70'

"Third, 'Witness fees: $116.60'

"Fourth, 'Deposition fees: $173.50'

"(5) 'Printing of briefs and copies: $326.78'

"(6) 'Accountant's fees: $2,385.00'

[ 135 ]

"(7) 'Attorney's fees: $7,000.00'
"(8) 'Appellate Court costs: $2,361.78'
"(9) 'Expenses of moving into motel: $124.84'
"(10) 'Applied to operation of motel: $2,775.00'
"(11) 'Applied to operation of motel: $1,690.80'
"(12) 'Government employment taxes: $356.62'
"(13) 'Gas and heat: $103.61'
"(14) 'Management fees for six and one-half months: $3,900.00'
"* * *

"Now, a copy of this summary of issues will be given to each member of the jury when you go in to deliberate.
"* * *

"If you find that the Plaintiff was entitled to a verdict in this case, then you should determine the amount of general or compensatory damages for Plaintiff's loss. Compensatory damages are measured by the difference between the purchase price of the property and its fair market value at the time of sale.

"If you determine and find general damages, then you may consider special damages. Special damages may include any pecuniary loss suffered as a consequence of the recipient's reliance upon the truth of the representation."

Defendants' exceptions to these instructions were as follows:

"THE COURT: Now, exceptions for the Defendant?"

"MR. PROHASKA: Yes. First of all, Defendant excepts to the Court giving of the summary of issues as read by the Court, passed to the jury. I think that in accordance with the new statute, it is not impartial. It emphasizes the damages, particularly the special damages, and I think it is improper.

"Secondly, I would—Defendants object to the instruction on the special damages, pecuniary damages, *based on my prior arguments to the effect I don't think it is a proper measure of damage in the case, many of them.* The Court has said I do not need to itemize my objection, but I may object on the whole to them, and I understand—you understand my argument. I just want to make sure my record is clear."

"THE COURT: Then it should be understood on the record that that was in reference to *all 14*?"

"MR. PROHASKA: Yes, the 14 items."

"THE COURT: The exception, without going to each of the 14 specifically on the record, will be understood to do so." (Emphasis added)

Defendants' "prior arguments," to which reference was made in those exceptions, are:

(1) At the conclusion of the testimony defendants made the following motion:

"MR. PROHASKA: * * * I would like to move to strike all of those elements of damages set forth in the Plaintiff's complaint in paragraph 13, *which would have to do with the rescission and foreclosure suit.* We have gone into it in detail. Your Honor has permitted him, but I renew my motion to strike those elements of damage." (Emphasis added)

The items set forth in the court's instructions on special damages were substantially the same as those alleged in paragraph 13 of plaintiff's complaint.

(2) During the course of the testimony offered on behalf of the plaintiff, the following objections were made by defendants:

"MR. PROHASKA: Your Honor, I presume maybe I am somewhat premature. I presume counsel is attempting now to show the various costs that are on the final decree of strict foreclosure. These are absolutely irrelevant to this case. They are not proper measure of damages. The Plaintiff is the one that has brought all these lawsuits. She is the one that caused all the hearings. The damages in the rescission suit, or the counterclaim in the rescission suit on the foreclosure are not a proper element of damages in this fraud action. The cases are clear. They aren't, even by any stretch, consequential damages.

"The proper measure of damage, as I said time and time again, is the difference in the market value of the time of the sale and the amount it would have been but for the fraud. And I don't know how she can—how counsel thinks that these are proper elements of damages for the jury to consider. There is simply no basis for

it. I don't want to have to get—every time a figure is mentioned, it makes me object every five minutes, and it is in front of the jury. I think *I would request at least a ruling that applies to all of these type of damages* so I don't have to object every, every time."

"* * * * *"

"THE COURT: * * * I have concluded that, from the pleadings, and the facts that I have listened to thus far, that I am going to permit the following: In an effort to, at least, reach some result in this case, I am going to ultimately instruct the jury along the lines—if it gets to the jury, let's take that first—if they find a fraud that first, as far as the general damages are concerned, they should apply the *out-of-pocket,* or the rule that says that it should be the difference in the value between what the person actually did agree to pay, or pay, as opposed to what the market value is. *I will separately instruct them that they can also find those specific damages that might arise or result from the fraud, and that is more specifically contained within paragraph 13* of the supplemental and fourth amended complaint."

"* * * * *"

"MR. PROHASKA: Your Honor, just to make sure I understand your ruling, you *will permit the Plaintiff, or any other witness to testify to the damage alleged in paragraph 13?*"

"THE COURT: That's correct." (Emphasis added)

## I. *Expenses of previous litigation.*

Defendants contend that plaintiff is not entitled to recover as special damages those items which represent the expenses incurred by her in previous litigation.

It will be noted that the first eight items of special damages submitted to the jury related to such litigation expenses. These expenses were incurred by plaintiff in previous unsuccessful litigation with the prior owner of the motel. *See Larkin v. Appleton,* 274 Or 671, 548 P2d 499 (1976), Larkin being the former name of plaintiff Genevieve Osborne.

The litigation in *Larkin* was precipitated by plaintiff's failure to make a monthly payment on the motel after discovering the discrepancies in the income figures. Two lawsuits were then filed. Appleton, the seller, filed a suit for foreclosure against plaintiff. Plaintiff sued Appleton for rescission of the contract of sale. Upon learning of plaintiff's suit, Appleton dismissed her complaint and counterclaimed for foreclosure in the rescission suit.

Plaintiff's theory at trial of that case was that rescission was justified either because O'Byrne (the defendant salesman here) acted as the agent of Appleton in making the misrepresentations of the motel's income, or because Appleton ratified O'Byrne's conduct by retention of the proceeds of the sale.

The trial court concluded:

"Jean Appleton * * * benefited economically from the deceptions of O'Byrne.

"In equity, Jean Appleton * * * cannot retain these benefits.

"Genevieve Larkin is entitled to rescission. * * *."

On appeal, we reversed. After concluding that O'Byrne was not acting as the agent of Appleton in making the misrepresentations, and in considering plaintiff's contention of ratification (at 677), we noted that:

"* * * Retention will not constitute a ratification if the principal has changed her position before becoming aware of all the relevant facts."

and (at 679) that:

"In the present case, Mrs. Appleton substantially changed her position before she learned of O'Byrne's misrepresentations."

The "change of position" arose primarily from the fact that Mrs. Appleton received little, if any, of the $36,000 paid by plaintiff on the contract, but merely passed it on to other parties. As a result, it would have been difficult, if not impossible, for the "status quo" to

[ 139 ]

be restored by a rescission of the sale, as then sought by plaintiff.

Under these circumstances this court concluded (at 681) as follows:

> "Neither plaintiff nor Mrs. Appleton were personally at fault in this transaction. However, if the evidence was only that Mrs. Appleton received substantial benefit from the fraud of O'Byrne, plaintiff should prevail. This rule '* * * is based upon the equitable principle that one should not benefit from the fraud of another, at least when the other is, or purports to be, his agent.' Restatement (Second) Agency, 564, § 259.
>
> "However, when Mrs. Appleton changed her position before learning of O'Byrne's misrepresentation, the equities shifted. Now it is impossible to place the parties in the position they were in before they entered into the transaction. If Mrs. Appleton is required to make restitution to plaintiff, Mrs. Appleton will be substantially damaged. If plaintiff does not secure restitution, she will be substantially damaged. In such circumstances the law will not intrude to favor either innocent party."

On remand, a decree of foreclosure was entered on behalf of Appleton against plaintiff. Plaintiff was apparently unable to redeem within the period allowed by the decree. She then filed her complaint in this case.

In *Huffstutter v. Lind,* 250 Or 295, 301, 442 P2d 227 (1968), we held that:

> "* * * [A]ttorney fees are generally allowable as damages in an action against a defendant where the defendant's tortious or wrongful conduct *involved* the plaintiff in prior litigation *with a third party.* Prentice v. North American Title Guaranty Corp., Alameda Division, 30 Cal Rptr 821, 381 P2d 645 (1963); McCormick, Damages, 247 § 67 (1935); Restatement, Torts, 591, § 914 (1939). * * *" (Emphasis added)

In McCormick, Damages, 247, § 67 (1935), cited with approval in *Huffstutter,* the following rule is stated:

> "When one by fraud or other actionable misconduct makes it necessary for another to bring or defend a suit,

the latter in a new action may recover against the former the expenses of the earlier litigation."

McCormick goes on to comment (at 247):

"Fraud is a frequent source of liability for expenses of litigation. A life insurance company's agents secured premium notes from plaintiff by fraudulent statements falsely describing the policy to be issued, and the company transferred the notes to a good-faith holder who sued on the notes. Plaintiff, having *substantial grounds for believing* that the transferee had conspired with the company to perpetrate the fraud, defended that suit and lost. He was allowed to recover the attorney's fee and expenses incurred in that defense. \* \* \*" Citing McOsker v. Federal Ins. Co., 115 Kan. 626, 224 P 53 (1924). (Emphasis added)

*See also* Restatement of Torts 591, § 914 and Comment *a* (1939),[1] and Annot., 45 ALR2d 1183 (1956).[2]

---

[1]Restatement of Torts 591, § 914 (1939), states as follows:

"A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney fees and other expenditures thereby suffered or incurred."

Comment *a* states that:

"The rule stated in this Section applies where the preceding action was brought either by a third person or by the State and also where the present plaintiff has been led by the defendant's tort to take legal proceedings against a third person. \* \* \*"

[2]Two of the cases cited in the annotation deserve mention. In *Turner v. Zip Motors,* 245 Iowa 1091, 65 NW2d 427, 433 (1954), the Supreme Court of Iowa stated the rule as follows:

"\* \* \* It matters not whether the litigation with the third party was prosecuted or defended; the only qualifications are that it must have been caused by a tortious act or breach of contract of the defendant in the suit for recovery of fees or other proper expenses and must have been conducted in good faith and with reasonable ground for belief in a successful outcome. \* \* \*"

In *Bergquist v. Kreidler,* 158 Minn 187, 196 NW 964 (1924), the Supreme Court of Minnesota held (at 966) as follows:

"\* \* \* That litigation constituted a reasonable effort to avoid or minimize the consequence of defendant's act. 8 R.C.L. 496. True, the object of that litigation was not accomplished. That it was ineffectual, under the circumstances, is not persuasive of a contrary result. 17 C.J. 806. If such expenditures are 'judicious and made in good faith' they may be 'recoverable, though abortive.' \* \* \*"

This plaintiff was previously "involved" in foreclosure and rescission litigation with the former owner of the motel as a result of defendants' fraudulent conduct. Plaintiff prevailed in the trial court in her rescission suit, and might well have prevailed in this court as well if the defendant Appleton had not "passed on" to others most, if not all, of the money received from plaintiff. Certainly, plaintiff at least had "substantial grounds for believing" that her rescission suit was appropriate. As a result of that litigation, however, plaintiff was required to pay the costs and attorney fees, among other things, incurred by defendant Appleton in that litigation, totaling in excess of $9,361.78. This represents the bulk of the $12,859.04 sought by plaintiff as the total of the expenses incurred by her in that prior litigation with Mrs. Appleton. The remaining $3,497.26 included filing fees and other costs (other than attorney fees) incurred directly by plaintiff in that litigation. In defendants' objections, however, no such distinction was made and the objection was to the allowance of all items of special damages which "have to do with the rescission and foreclosure suit."

We hold that under these facts the plaintiff was entitled to recover the expenses incurred in such previous litigation with a third party. It follows that the trial court did not err in allowing the jury to consider the expenses of the prior litigation as special damages "suffered as a consequence" of plaintiff's reliance upon the truth of the misrepresentations.

II. *Expenses incurred in operation of motel.*

Defendants also contend on this appeal that plaintiff is not entitled to recover for the remaining six items of special damages, which consist primarily of expenses incurred in the operation of the motel, plus "management fees" for the period during which plaintiff was in possession of the motel and that to allow recovery of such items is, in effect, to allow a "double recovery."

[ 142 ]

On the other hand, it may be that such expense were consequential damages resulting from defendant's fraud and, as such, were recoverable in addition to general damages for the difference between the price paid by plaintiff for the motel and its actual market value. *See* McCormick on Damages 458-459, § 122 (1935).

We do not undertake to decide in this case whether or not the trial court erred in submitting to the jury plaintiff's claim for recovery of such expenses because defendants failed to make a proper objection to the submission of plaintiff's claim for these six items of special damages.

As previously noted, the exception by defendants' counsel to these instructions by the trial court was that "based on my prior arguments to the effect I don't think it is a proper measure of damage in the case, *many* of them." As also previously noted, the only "prior arguments" quoted in defendants' assignments of error relate to "those elements of damages set forth in the Plaintiff's complaint in paragraph 13, *which would have to do with the rescission and foreclosure suit*" and were that "[t]he damages in the rescission suit, or the counterclaim in the rescission suit on the foreclosure are not a proper element of damages * * *."

Defendants did not, however, make any specific or proper objection at the time of trial to evidence relating to any of the other items of special damages as alleged in plaintiff's complaint or to the submission to the jury of plaintiff's claim for recovery of such items.

We have repeatedly said that we will not ordinarily reverse a trial court for errors not called to its attention by proper objections or exceptions. *Harley-Davidson v. Markley,* 279 Or 361, 371-372, 568 P2d 1359 (1977); *Lundquist v. West,* 248 Or 494, 499, 430 P2d 1013, 435 P2d 309 (1968); and *Jones v. Mitchell Bros.,* 266 Or 513, 523, 511 P2d 347, 514 P2d 350 (1973), and cases cited therein. On this state of the

record, we decline to reverse the trial court for its submission to the jury of the last six items of plaintiff's claim for special damages.

III. *Other assignments of error.*

■  Defendants also assign as error the overruling of defendants' motion for a directed verdict upon the ground that by filing a previous suit to rescind the sale plaintiff had made a binding election of remedies and, as a result, could not bring an action for damages against these defendants. When, however, it develops that the remedy first attempted is not available to the plaintiff, he is not barred from then seeking another remedy which may be available to him. *Andrysek v. Andrysek,* 280 Or 61, 72, 569 P2d 615 (1978); *Johnson v. Dave's Auto Center,* 257 Or 34, 40, 476 P2d 190 (1970); *Payne v. Griffin,* 239 Or 91, 95, 396 P2d 573 (1964), and cases cited therein.[3]

■  Defendants next assign as error the denial of their motion for directed verdict on the further ground that the only testimony of the market value of the motel was that of the plaintiff, and that her opinion was not competent evidence as expert testimony was required. Plaintiff's testimony that, in her opinion, the actual market value of the motel was only $125,000 was received without objection. Regardless of the absence of an objection, however, this court has held that testimony by an owner of property as to its value is competent evidence of that fact. *Moss v. Peoples Calif. Co.,* 134 Or 227, 237, 293 P 606 (1930); *Hanns v. Friedly,* 181 Or 631, 641, 184 P2d 855 (1947). *See also Lewis v. Worldwide Imports, Inc.,* 238 Or 580, 584, 395 P2d 922 (1964). Defendants ask that we reconsider and overrule these decisions, as applied to commercial real property, citing *Freedman v. Cholick,* 233 Or 569, 577,

---

[3]This is not a case in which it is contended that a plaintiff who sued one party on one theory is not barred by an election of remedies from then suing *another party* on another theory. In this case the previous suit for rescission also named as defendants the same parties named as defendants in this case, although the former owner of the motel was also a defendant in that case.

379 P2d 575 (1963), in which that rule was criticized. Assuming, but not deciding, that such a rule may be of questionable validity, we do not consider this to be a proper case in which to reconsider that rule.[4]

■ Defendants' final assignment of error is that the trial court erred in denying their motion for a mistrial based upon the emotional breakdown of plaintiff on the witness stand. As previously held by this court, the consideration of such motions involves matters peculiarly within the discretion of the trial court. *See DeSpain v. Bohlke,* 259 Or 320, 323-324, 486 P2d 545 (1971), and *Hays v. Herman,* 213 Or 140, 145, 322 P2d 119 (1958) (overruled on other grounds in *Maulding v. Clackamas County,* 278 Or 359, 365, 563 P2d 731 (1977)). In our opinion, the trial court did not abuse its discretion in denying defendants' motion for a mistrial in this case.

IV. *The cross-appeal.*

■■ As previously stated, plaintiff has cross-appealed from the granting of an involuntary nonsuit in favor of defendant Bill Hay, the individual real estate broker. Bill Hay is the owner of Bill Hay, Inc., the real estate brokerage firm which was the employer of defendant O'Byrne, the salesman who made the representations claimed by the plaintiff to be false and fraudulent. Plaintiff concedes that there was not "sufficient evidence that [defendant] Bill Hay had guilty, personal knowledge of the false figures" on the data sheet which is the basis for plaintiff's claim of fraud, but contends that "there was respectable and substantial evidence from which the jury could have found Hay reckless." As contended by defendants, however, in order to hold the officer of a corporation personally liable for fraud by an agent or employee of the corporation it is necessary to show that the officer

---

[4]Defendants also complain that "plaintiff's change of pleading to conform to the proof did not permit the defendants an opportunity to present an expert to dispute plaintiff." Defendants do not, however, assign as error the ruling of the trial court permitting plaintiff to amend its complaint to conform to the proof.

had knowledge of the fraud, either actual or imputed, or that he personally participated in the fraud. *See McFarland v. Carlsbad Sanitorium Co.,* 68 Or 530, 536-537, 137 P 209 (1914), and *Hoff v. Peninsula Drainage Dist.,* 172 Or 630, 643, 143 P2d 471 (1943). Plaintiff points to no such evidence in this case. It follows that plaintiff's cross-appeal is without merit.

For the reasons previously stated, we hold that the trial court did not err with respect to any of the various assignments of error.

Affirmed.