Argued and submitted July 30,
affirmed November 10,
reconsideration denied December 17,
petition for review denied December 31, 1980 (290 Or 302)

STATE OF OREGON,
*Respondent,*

*v.*

GEORGE WESLIE HARVEY,
*Appellant.*

(No. 22360, CA 16500)

619 P2d 288

David E. Groom, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

John C. Bradley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

ROBERTS, J.

**ROBERTS, J.**

Defendant seeks reversal of his conviction for manslaughter in the first degree, ORS 163.118. This is an appeal from defendant's retrial for manslaughter ordered in *State v. Harvey,* 38 Or App 529, 590 P2d 770 (1979), because of the erroneous admission of an ambulance logbook. In the case before us the logbook was again admitted, and defendant again appeals on that basis. He also assigns error to the overruling of an objection to a demonstration of the firing mechanism of the shotgun involved in the homicide. We affirm.

At his first trial,

"* * * Defendant testified that he and the deceased had been seeing each other for two-and-a-half years prior to her death and that they had periodically lived together. On the day of her death he was going to see another woman, but first he drove to the deceased's residence. Although she did not answer the door, he entered anyway. She came into the living room, and they began to talk. When she asked him to let the dog out of his truck, he went to the truck, let the dog out and returned to the house with his loaded shotgun. He testified that he never left the gun unattended in the truck and that he usually kept it loaded.

"Inside the house defendant placed the shotgun on the couch. Deceased sat down on the couch and defendant sat on the arm of the couch. He explained to her that he was going to see another woman. After a period of silence, he said, 'Well, I might as well leave,' and reached for his shotgun. As he pulled the gun toward him, she sprang up, pleading, 'Please don't go,' and grabbed the barrel of the gun. He tried to pull it away, saying, 'The gun is loaded.' The shotgun went off, shooting her in the chest and killing her." 38 Or App at 531.

In attempting to rush the victim to the hospital, defendant's truck broke down and he flagged down a passing fire department ambulance. One of the two paramedics in the ambulance was called as a witness at defendant's first trial. He testified on direct examination that the defendant had jumped out in front of the ambulance, and that his exact initial words were "that he had just killed somebody." The paramedic also testified, without referring to his notes in the ambulance logbook, that the defendant had told him he had not known the gun was loaded. 38 Or

App at 532. Following the witness' testimony, the prosecutor offered the logbook as a past recollection recorded, and it was accepted as an exhibit.

We ruled on appeal that the admission of the logbook was improper because the paramedic had given no indication that he was unable to fully and accurately recall the events in question. 38 Or App at 537. We relied on *Scanlon v. Hartman,* 282 Or 505, 509, 579 P2d 851 (1978), stating that once the witness' oral testimony, which was the primary evidence, had been received, the logbook, which was secondary evidence, should not have been admitted.

By disposing of the question in this manner, we did not reach defendant's objection that, since the witness had testified without a memory lapse, the introduction of the logbook as a recorded recollection was improper under the standard of *Elam v. Soares,* 282 Or 93, 577 P2d 1336 (1978). In *Elam,* the Supreme Court adopted the standard of Rule 803(5) of the Federal Rules of Evidence for admission of a document as a recorded recollection, *i.e.,* it must be shown that the memorandum concerns

"* * * a matter about which the witness once had knowledge *but now has insufficient recollection to enable him to testify fully and accurately,* shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge accurately. * * *" 282 Or at 99.

The case before us now requires us to decide whether the admission of the logbook at defendant's second trial was permissible. We conclude that it was.[1]

Defendant's initial trial was held in the fall of 1977, at which time the ambulance driver who had made the log entry in question testified "clearly and unequivocally concerning the point for which the logbook was offered,

---

[1] In *Elam,* since the memorandum was not admissible, the court did not decide whether to adopt the further requirement of Rule 803(5) that "the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party." 282 Or at 99, n 2. Because the case did not decide this question, defendant's objection to the admission of the logbook as a past recollection recorded "on the basis of *Elam* " only raises the question of witness recollection and does not amount to an objection to the logbook being offered as an exhibit. Nor does defendant argue this question on appeal. We therefore do not consider it.

*i.e.,* defendant's initial statement." 38 Or App at 536. At defendant's second trial, in October, 1979, the same witness testified that the events about which he was being questioned were "two years ago and [a] thousand [ambulance] runs ago. It is tough to remember exact words." He stated repeatedly that he could not testify as to what happened or what words were used in the exchange between the defendant and himself which took place in August, 1977. In response to questions by the prosecutor he said repeatedly he could not recall the "details" or the "exact words" or anything other than a "generalization," without the aid of the logbook itself, even after reviewing the logbook the day before the trial. On an offer of proof by the defense, however, the witness said he could remember the first words he heard the defendant utter, and that these were "I killed her. I killed her."[2] After this the witness testified that he believed the defendant

> "used the word 'murder' several times, accidentally shot. Basically he discussed something about working at Hood River or someplace like that and coming home, possibly taking the gun in the house, and this is part of the vague area. I am not sure without refreshing of where or what I could remember about that. The operative words that I am using come only from refreshment with the book."

---

[2] This is the same testimony this witness offered at defendant's first trial. It is not consistent with the entry in his logbook:

> "Upon returning to station 50'N. of intersection we were stopped by man who jumped out in front of our rig. He yelled he had murdered someone and went over to a white P.U. parked on Rt. shoulder of road. Gentleman very upset. Laying on front seat of vehicle was a female with apparent injuries to chest. I returned to vehicle and summoned assistance thru our dispatcher from the County & State Police.* I took one look at victim & was certain she was dead. I turned to ask the driver what happened & he collapsed alongside P.U. I picked him up and again asked what happened. He stated he had accidently shot victim with a shotgun. I then turned him over to Ribble who took him to the mod. to try to calm him down. I then, carefully, checked female. There was a doberman pincer sitting on her legs looking out the passenger window. He made no attempt to attack. I turned P.U. engine off, shut off lights & CB. I then waited by P.U. for police to arrive. Ribble was told that the incident happened at 255 NW Franklin. He gave his name as George Weslie Harvey, DOB-8-18-40. He stated he worked in Hood River and had just returned home. He entered house with loaded shotgun. While unloading, gun went off striking her in chest. He then loaded her in P.U. and headed for hospital. The drive shaft and muffler fell off at 20 & Denser. He flagged us down for help. Turned over to * * *"

* At this point the attendant's writing stopped and his partner's began.

■  In *United States v. Williams,* 571 F2d 344 (6th Cir 1978), *cert den* 439 US 841, 99 S Ct 131, 58 L Ed 2d 139 (1978), a forgery case, the memorandum sought to be admitted was one containing statements by the defendant boasting about the crime. The court found there was no doubt the witness had sufficient recollection to testify generally about conversations with the defendant. The crucial part of the conversations, however, was whether the defendant said how the forged checks came into his possession. This was what the witness could not recall, even after refreshing his memory with the document. The court concluded that once it was established that the witness' in-court testimony would be incomplete because of his insufficient recollection, the statement which was made when the events were fresh in his mind, and which he repeatedly testified was accurate, became admissible under Rule 803(5). 571 F2d at 349.

■  We believe this is the rule which should be applied in this case. The paramedic testified that the logbook entry was made immediately upon his return to the fire station following the incident, when events were fresh in his mind. He said that it was information from his own personal knowledge, written in his own hand or by his partner. Though he claimed to remember defendant's first words, he was insistent that he could not remember other details of what defendant told him.

It is important to consider the purpose for which the testimony is being offered. In the first *Harvey* appeal, we assumed that the logbook was offered for the proof of defendant's first words to the medical team. While that was undoubtedly one purpose, it is clear from this case that the prosecution was also offering the logbook as evidence of the several explanations defendant offered for the events on the evening of the victim's death.[3] The details he told as to

---

[3] At the second trial, the defendant did not take the stand, but his testimony from his previous sentencing hearing was read into the record. On the evening of the victim's death, he testified he went to her house and took his loaded shotgun with him into the house, as he always did. He testified that after telling her he was going to marry another woman, he left. Remembering he had left his gun inside, he went back to get it. She begged him to stay, and as he attempted to shove her away from him with the shotgun, she grabbed the gun and it went off, striking her in the chest and killing her.

how the shooting occurred are precisely what the witness testified he was unable to recall without reading from the logbook. We conclude that, where the witness could not testify fully and accurately to the events which had transpired, the logbook was properly admitted.[4]

■■ Defendant also objects to an in-court demonstration to show that the shotgun used would not accidentally go off if grabbed. The trial court has broad discretion in allowing demonstrations and experiments, as long as the experiments are performed under conditions substantially similar to those occurring at the time of the events in question, and the test tends to enlighten the jury and help in its deliberations. *See Hassebroek v. Norman,* 236 Or 209, 387 P2d 824 (1963); *State v. Sack,* 210 Or 552, 581, 300 P2d 427, *cert den* 353 US 962, 77 S Ct 1048, 1 L Ed 912 (1956); *Leonard v. Southern Pac. Co.,* 21 Or 555, 28 P 887 (1892); *State v. Gill,* 3 Or App 488, 474 P2d 23 (1970); 17 ALR2d 1078 (1951). The circumstances of the test situation need not be identical with those of the actual event.[5]

■■ It is not clear from the trial transcript whether, or to what extent, the district attorney or the defense attorney may have pulled on the barrel of the gun to show if it would fire in such a situation. That the victim was a small woman and these actors were all men was admittedly true. However, this exhibition was within the discretion of the trial

---

A second version of the story, a tape recording of a police interview with the defendant the morning after the shooting, was played for the jury. In it the defendant apparently told a slightly different version of the story; that the victim had spilled something on herself, jumped up from the couch and bumped the gun, discharging it.

The details in the ambulance logbook present a third version of the story, that the gun went off while defendant was unloading it. The prosecution attempted to have admitted still another version, testimony by the defendant at his first trial, but this evidence was excluded.

[4] In both appeals, the state has raised an alternative suggestion that the ambulance log is admissible as a business record. Because we decide that it is properly admissible as a past recollection recorded, we again need not decide this issue.

[5] The Supreme Court has allowed an in-court demonstration of a single rail wheel on a track in litigation over a railroad wreck, *Leonard v. Southern Pacific, supra,* and allowed a plaintiff to climb over counsel table to demonstrate how his leg had been injured in getting in and out of a locomotive crane. *Pooschke v. Union Pacific R. Co.,* 246 Or 633, 426 P2d 866 (1967).

court. Any difference in circumstances between the in-court test and any actual event goes to the weight of the evidence, not its admissibility. Defendant's objection to the demonstration was properly overruled.

Affirmed.